**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**



| | | |
|---|---|---|
| **ROBERT THACKSTON,** | § | |
| | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 5:24-cv-00276** |
| | § | |
| **HONORABLE CHRISTINE E.,** | § | **JURY DEMANDED** |
| **WORMUTH, SECRETARY, OF THE** | § | |
| **ARMY, d/b/a BROOKE ARMY** | § | |
| **MEDICAL CENTER,** | § | |
| | § | |
| **Defendant.** | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

**TO THE HONORABLE U.S. DISTRICT JUDGE:**

**NOW COMES**, Plaintiff, ROBERT THACKSTON, complaining of and about Defendant, HONORABLE CHRISTINE E., WORMUTH, SECRETARY, OF THE ARMY, d/b/a BROOKE ARMY MEDICAL CENTER, and for cause of action files this Plaintiff's Original Complaint, showing to the Court as follows:

### I.    PARTIES AND SERVICE

1.    Plaintiff, Robert Thackston, is a citizen of the United States and the State of Texas.

2.    Defendant Christine E. Wormuth is the Acting Secretary of the Army and is being sued in her official capacity as the Acting Secretary of The Army. In accordance with Federal Rules of Civil Procedure Rule 4(i)(1)(2), Plaintiff is serving Defendant by serving the Honorable Christine E. Wormuth.

## II.    <u>JURISDICTION AND VENUE</u>

3.    This Court possesses jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims are grounded in federal law: allegations of disability discrimination and hostile work environment under the Rehabilitation Act, 29 U.S.C. 791 et seq.; and retaliation under Title VII of the Civil Rights Act of 1964 (as amended), which is enshrined in 42 U.S.C. §§ 2000e-3(a) and 2000e-2(a) respectively.

4.    Venue is proper in the Western District of Texas - San Antonio Division pursuant to 28 U.S.C. § 1391(a) because this is the judicial district where the Defendant's principal place of business exists.

## III.    <u>NATURE OF ACTION</u>

5.    This is an action brought by Plaintiff against Defendant initiated under the provisions of the Rehabilitation Act (RA) for allegations of disability discrimination and hostile work environment. Plaintiff also brings a retaliation claim under the provisions of Title VII of the Civil Rights Act of 1964. The purpose of this action is to rectify and obtain redress for the Defendant's unlawful employment practices regarding discrimination on the basis of disability, retaliation for asserting his rights under Title VII. Plaintiff suffered harassment based solely on his disability that affected a term, condition, or privilege of his employment when Defendant failed to promote Plaintiff because of his disability, therefore, this lawsuit is being filed to prevent Defendant from perpetuating such discriminatory practices.

6.    Plaintiff is equally or more qualified in his position than similarly situated pharmacy technicians in the GS-7 position, and the U.S. army failed to promote Plaintiff into higher pay grade positions GS-7; GS-8 and GS-9 or other positions for which he was equally or

more qualified solely because of his disability. Thus, Plaintiff can easily establish a *prima facie* claim of disability discrimination under the Rehabilitation Act.

7.      Plaintiff was forced to file multiple complaints because he was experiencing discrimination and a hostile work environment to appropriate personnel at US Army on multiple occasions. The decisionmakers for Defendant were aware of Plaintiff's complaints of discrimination, including Plaintiff's EEO complaints. Because Plaintiff engaged in protected activity by filing internal complaints Defendant continues to deny Plaintiff promotions and pay increases, which he would have received but for engaging in protected activity. Therefore, Plaintiff can establish a *prima facie* case of retaliation under Title VII.

8.      Plaintiff alleges severe and pervasive conduct because of his disability, and the harassment was based solely on his disability, which affected a term, condition, or privilege of his employment. Defendant had actual notice of the harassing behavior and failed to take prompt remedial action. Therefore, Plaintiff can establish a *prima face* case of hostile work environment under the Rehabilitation Act.

### IV.    CONDITIONS PRECEDENT

9.      The law allows individuals who have been discriminated against and retaliated against to file a lawsuit in federal court. This action is under the Rehabilitation Act, for allegations of Disability Discrimination, Hostile Work Environment, and Retaliation under Title VII.

10.      On February 24, 2019, Plaintiff filed a dual Charge of Discrimination (Charge No. 451-2023-00083X) with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") and the Texas Workforce Commission (hereinafter referred to as the

"TWC") against Defendant for disability discrimination, hostile work environment, and retaliation.

11.    Subsequently, the EEOC issued Plaintiff a Notice of Right to Sue, received on December 20, 2023. The plaintiff files this lawsuit within ninety (90) days of receiving the Right to Sue notices. Therefore, this lawsuit is timely filed.

## V.    FACTS

12.    On April 11, 2011, Mr. Thackston commenced his employment at the Brooke Army Medical Center Pharmacy (BAMC) as a pharmacy technician, specifically in the Pharmacy Supply & Support section.

13.    On or about April 22, 2013, Mr. Thackston requested DMLSS training during his initial performance counseling for the rating period beginning May 1, 2013.

14.    On May 8, 2013, Mr. Thackston provided his supervisor with a memo from Dr. Jennifer Slim. This memo stated he has a medical condition that limits his use of his knees, and that he would require limited weight-bearing activities with frequent rest periods for prolonged standing/sitting.

15.    In 2014, he requested reasonable accommodation, but the request did not undergo a formal process, lacking a disability program manager and proper documentation. During the same year, he underwent a fitness-for-duty (FFD) examination, the results of which were not disclosed to him until December 2014. Dr. Grover Yamane from BAMC Occupational Health determined him to be "unfit for duty" without conducting an examination.

16.    On March 18, 2014, Mr. Thackston requested reasonable accommodations from SSG (staff sergeant) Scott Jennings and CPT (captain) Adam Davies. Mr. Thackston asked them

to consider providing accommodations that would help lessen the need for any prolonged standing, bending, or walking. The plaintiff offered to provide current and detailed documentation to assist with the decision.

17.     On April 8, 2014, Mr. Thackston submitted the Return-to-Work memo to management, specifically addressing CPT Davies and SSG Jennings.

18.     On April 8, 2014, Mr. Thackston received a Return-to-Work memo from Dr. Grover Yamane (Occupational Health), which included the following statement: "*no bending, stooping, squatting, and to limit standing/walking to 30-60 minutes at a time*."

19.     On April 25, 2014, Mr. Thackston received an email from SFC (sergeant first class) John Perkins, NCOIC, Department of Pharmacy, stating that the Pharmacy's official position was to allow Mr. Thackston to work within the prescribed limitations set by Dr. Yamane. This email served as the closest form of documentation that Plaintiff received indicating the approval of his reasonable accommodation request.

20.     On April 30, 2014, Mr. Thackston received an email from Ms. Bertina Black, a VA Vocational Rehabilitation Counselor. She stated that since the employer was allowing Plaintiff to work within the limitations set by the Occupational Health Physician, his current position was suitable, hence he would not meet the requirements of entitlement for the program. She then denied his service request.

21.     On May 9, 2014, CPT Davies sent an email to AFGE proposing a DMLSS Interest/Rotation, stating, "*The Pharmacy Department proposes to set up a separate PD for Ms. Edith Cooper and Mr. Michael Rosser. We will work with Ms. Michele Smith to work on the accretion of duties as discussed on the phone. This will have the least impact on the mission and*

*the hospital by going through this process... The rotation will be a 6-month rotation to give ample time and experience for the employee to understand and be efficient with the process and ordering/DMLSS system. A competency binder and training program will be set up by the OIC (CPT Davies), NCOIC (SSG Jennings), and the procurement agents Ms. Cooper and Mr. Rosser (both hired under the same position description (GS-0661) as all other pharmacy technicians at that time. This will take 6 months to properly prepare, and the rotation will start at the mid-point (around November 2014) for the first employee..."* Despite CPT Davies identifying Ms. Cooper and Mr. Rosser as procurement agents, each of them was hired under the same position description (GS-0661) as all other pharmacy technicians at the time.

22.     On May 16, 2014, Mr. Troy Philips (LMER) sent an email to LTC (lieutenant colonel) Debra Causey, LTC Christopher Willard, MAJ (major) Doreene Aguayo and SSG Jennings. He sent a list of names, which included Plaintiff, which were submitted to Michele Smith (BAMC HR) to see if there were positions within BAMC where they can be accommodated within their restrictions. The plaintiff was reassigned from the Supply & Support Pharmacy to man a kiosk desk at the CPT Jennifer M. Moreno Pharmacy. Instead of performing duties as a pharmacy technician, he was required to carry out tasks previously reserved for a Red Cross volunteer.

23.     In May 2014, a decision was made to dissolve the Pharmacy Supply and Support Pharmacy. Existing staff with the highest service computation dates were given the first choice of preference for reassignment to either the inpatient or outpatient pharmacy. Mr. Negron Aquino, Ms. Estella Reyes, Mr. Paul Hart, and Mr. Thackston were excluded from reassignment due to the four employees being ordered to complete fit-for-duty exams.

*Plaintiff's Original Complaint*                                        Page **6** of **39**

24.     On or about June 3, 2014, Mr. Thackston learned management would no longer support any accommodations previously granted, he also learned that management initiated a job search on his name.

25.     On June 13, 2014, Mr. Thackston received notification from Mr. Philips (LMER), regarding his scheduled FFD examination on June 16, 2014.

26.     On June 17, 2014, CPT Davies, Officer in Charge (OIC), Pharmacy Supply and Support and SSG Scott Jennings, Noncommissioned Officer in Charge (NCOIC), Pharmacy Supply and Support, informed Pharmacy management that they were unable to accommodate Mr. Thackston due to his limitations.

27.     On June 24, 2014, Mr. Thackston kept an appointment with Dr. Yamane. During the appointment, Plaintiff discussed concerns Dr. Yamane had with the information he was provided from the Civilian Personnel Advisory Center (CPAC) and the Civilian Personnel On-line (CPOL) website. He noted that the information info supplied from CPAC contains a PD and essential functions list just written by management and a PD from CPOL, also he noted that some information from BAMC HR had not been reviewed/approved by the bargaining unit and by higher review levels. Also, have received an email from CPAC several days ago stating management can accommodate the limitations. The discrepancy between newly written PD (not officially cleared) and older PD resulted in a high preoccupation for Plaintiff. No examination was had that day, but Dr. Yamane and Mr. Thackston agreed to reschedule the appointment once Dr. Yamane obtained clearer information.

28.     On July 7, 2014, Dr. Yamane forwarded the results of a fitness-for-duty (FFD) examination to Mr. Phillips. He informed Mr. Phillips that Mr. Thackston was deemed unfit for

duty. Mr. Philips directed CPT Davies to immediately determine if reasonable accommodations could be made for Mr. Thackston.

29.    On August 19, 2014, a vacancy was announced for the position of Supervisory Pharmacy Technician on Job Announcement Number NCMD140980771193321D. There were five qualified and referred candidates (including Mr. Thackston).

30.    On October 2, 2014, Mr. Thackston met with MSG Gregory Austin (NCOIC, Department of Pharmacy) and SSG Jennings. He asked about the status of his fit-for-duty exam. MSG Austin confirmed that a search for other employment was ongoing and asked SSG Jennings why he hadn't informed Mr. Thackston of the situation. SSG Jennings told Plaintiff they were waiting for all the FFD determinations to come back as was advised by BAMC legal. Mr. Thackston was asked to step out of the room while they discussed the matter further

31.    On 20 October 2014, SSG Jennings sent an email to LTC Willard, MAJ Alexander Shilman, CPT Davies, and MSG Austin. SSG Jennings was requesting the interview of the candidates for the GS-08 position here in the S&S section. The three applicants were: Michael Rosser, Robert Thackston, and Leah Alsanders. No interviews were conducted. Nevertheless, Mr. Rosser was ultimately selected for the position.

32.    On November 14, 2014, Mr. Thackston received notification that he was not selected for job vacancy announcement # NCMD140980771193321D, by hiring official MAJ Alexander Shulman.

33.    On November 18, 2014, Mr. Thackston met with MAJ Alexander Shilman and inquired about the pending moves and the status of the FFD exam. MAJ Shilman provided, that

they weren't able to take care of the civilians the way they would like. Our priority is the mission and the soldier and that the union takes care of the civilians.

34.    On November 19. 2014, MSG Austin provided that a meeting with Ms. Michele Smith (HR) and Ms. Faith Fillman (BAMC Legal) was scheduled to gain more insight into the FFD and job-search situation. Unfortunately, Mr. Thackston never received an update.

35.    On November 21, 2014, Mr. Thackston sent an email to COL Kevin Roberts (Chief, Department of Pharmacy). COL Robert's provided that much of the indecision hinged on guidance from BAMC Legal.

36.    On December 12, 2014, Mr. Thackston met with COL Roberts and inquire again about the FFD and the pending Supply and Support personnel moves. COL Roberts provided that he had engaged several times and that they were still waiting for an FFD determination to come back. Plaintiff had previously reviewed his Occupational Health folder and learned of the results himself. He informed COL Roberts that his statement could not be true, but COL Roberts shared that was what he understood from BAMC Legal.

37.    On December 18, 2014, Mr. Rosser informed Mr. Thackston of the results of the examination, indicating his medical unfitness to perform his assigned duties.

38.    On May 11, 2015, COL Roberts sent an email to Union. Stating he remained uncomfortable placing an employee in a position that violates documented medical restrictions (first fit for duty). He also marked that the situation placed the institution at great risk for litigation if injury occurs, in addition to compromising the employee's health.

39.    On March 18, 2015, Mr. Rosser sent Mr. Thackston two forms (OF-178 and DD2807) for Mr. Thackston to complete in order to start a second FFD examination but provided

no reason for why another exam was required. On March 20, 2015, Mr. Thackston asked Mr. Rosser to fill out part B of the OF-178 he was provided but did not receive a response.

40.     From December 18, 2014 to March 18, 2015, despite CPAC's direction to Mr. Rosser to immediately determine if reasonable accommodations could be made, Mr. Thackston was assigned as the primary vault custodian where he trained numerous inpatient pharmacy technicians on vault operations.

41.     On January 5, 2015, the Pharmacy Supply & Support section was essentially dissolved. Employees assigned to the section were reassigned to either the inpatient or outpatient pharmacies. Only the four employees who were recently declared unfit for duty remained. Mr. Aquino Negron was forced to retire; Ms. Estella Reyes was required to complete a second fit-for-duty exam (she was subsequently reassigned to the Main outpatient pharmacy; Mr. Paul Hart, for reasons unknown even to him, was allowed to remain in the section until he retired in 2022. Mr. Thackston was assigned to the Pharmacy Supply and Support vault until he was tasked to man a kiosk desk beginning May 26, 2015.

42.     On February 5, 2015, at 10:13, Mr. Thackston sent an email to MSG Austin expressing concerns he had regarding the vault. Mr. Thackston intended to bring up the issue of the numerous employees having unrestricted access. Mr. Thackston invited him to visit the vault so he could further expound on the matter.

43.     On February 5, 2015, at 10:24, MSG Austin responded with an email to Mr. Rosser (supervisor) and Mr. Ronald Bazan (Union) stating, he was unaware of Mr. Thackston situation, and due to the case, they had a place for him at the FSH clinic manning the Q-flow ticket kiosk there. On February 13, 2015, MSG Gregory Austin sent an email to Mr. James Wall (CPAC)

stating, that due to the recent medical findings concerning Robert Thackston which found him unfit for duty we will be issuing our two-week notice to him on 20150208 to transfer him out to the FSH Clinic (currently Moreno Pharmacy) until BAMC HR can determine if there is a suitable position for him within the BAMC footprint.

44.    On May 14, 2015, Mr. Thackston inquired with MSG Austin about why another FFD exam was necessary. MSG Austin told him to engage the Union.

45.    On May 15, 2015, Mr. Thackston asked Mr. Rosser to fill out part B of the OF-178 but again did not receive a response. This day the Union notified Mr. Thackston of his reassignment to the FSH Pharmacy (currently, the Moreno Pharmacy).

46.    On May 20, 2015, Mr. Thackston received an overall performance rating of "Successful" (2) on his Civilian Evaluation Report for the period of May 1, 2014, to April 30, 2015. His rater was Mr. Rosser, and his Senior Rater was MAJ Shilman, Deputy Chief, Department of Pharmacy.

47.    On June 2, 2015, SSG Jennings forwarded the resumes of Mr. Michael Rosser, Ms. Leah Alsanders and Mr. Thackston to BAMC Legal (Ms. Faith Filman and Ms. Naomi Johnson), for unknown reasons to Plaintiff.

48.    On September 22, 2015, MSG Austin sent an email to Mr. Thackston stating, that he would move into the vault which will be structured around the specified limitations of Plaintiff's profile. Alleging that this move is an opportunity for Plaintiff to utilize his skills as much as possibly having in mind the restrictions of limitations.

49.    On September 23, 2015, Mr. Steven Connolly (Union) sent an email to Mr. James Wall (CPAC) stating, that Mr. Thackston was moved from the vault to where he is now because

of litigation and health concerns cited by COL Roberts. Mr. Thackston was notified on 22 Sept 2015 by SGT Nuells that he was to immediately begin training to move in the vault.

50.    This was done without notifying his lawyer or the Union. To avoid compromising or complicating legal matters since Mr. Thackston is in the middle of an EEO investigation and has engaged a lawyer.

51.    On September 24, 2015, MSG Austin sent an email to Mr. Thackston stating, "…*after reviewing the limitations of this profile it is apparent that placing you in the vault would violate this profile as some measure of stooping and bending will be necessary. We will continue with your current position which accommodates all portions of this profile.*"

52.    On February 2, 2016, Mr. Thackston inquired with his supervisor, SGT Nuells regarding his accommodated status.

53.    On February 9, 2016, Mr. Thackston emailed Ms. Michele Smith (HR) inquiring about how long he could expect to be held in the kiosk desk position. MSG Austin informed Mr. Thackston that Pharmacy management was waiting for Ms. Smith's office to search for "more suitable" employment.

54.    In March 2016, Ms. Faith Fillman (BAMC Attorney) and Mr. Phillips (LMER) mandated an ergonomic study to evaluate the suitability of a provided accommodation for Mr. Thackston.

55.    On March 28, 2016, Mr. Thackston inquired with Mr. Phillips (LMER) regarding his official status. Mr. Thackston asked if he was currently being reasonably accommodated, temporarily detailed, or if HR was still surveying vacant positions.

56.     On April 15, 2016, Mr. Earl Watson (Industrial Hygiene) completed a command-directed ergonomic study for the accommodation provided at the Moreno Pharmacy kiosk desk. Mr. Watson provided recommendations to Mr. Thackston's supervisor, SSG Erica McMillan (NCOIC, Moreno Pharmacy).

57.     On April 27, 2016, SFC Oriana Davila Le sent an email stating she had been asked to have the Plaintiff's report for an accommodation evaluation at the Occupational Health Clinic. Once again, management gave no reason for why another FFD was necessary.

58.     On September 13, 2016, Mr. Phillips responded to Mr. Thackston's email, stating Plaintiff was offered to take an FFD and he denied it. He offered it to Plaintiff again, stating that last FFD is close to two years old, so to address all concerns, a FFD exam was needed to go forward.

59.     On September 27, 2016, Ms. Fillman (BAMC Attorney) said, that Mr. Thackston was being temporarily accommodated by pulling tickets at Moreno since he was unfit for duty on file, so technically, they should be proposing his removal for medical.

60.     On January 16, 2018, Mr. Thackston received an email response from COL Gwendolyn Thompson (Chief, Department of Pharmacy). She provided, "*You raise a great question as to whether your accommodations were temporary or permanent*." COL Thompson asked CPT Baochau Vo to research the issue and get back to Mr. Thackston, but she did not.

61.     On November 9, 2018, Mr. Thackston was informed that he was not selected for job vacancy announcement # NCFR180840089805, by hiring official, Ms. Jennifer Walker.

62.     On November 28, 2018, SFC Garcia requested additional medical documentation from Mr. Thackston. The plaintiff informed SFC Garcia that the BAMC Occupational Health (OH)

office had a record of the unfit-for-duty memorandum Pharmacy management claimed they didn't know existed. The OH office provided SFC Garcia with a copy. She approached Mr. Thackston with Dr. Yamane's unfit-for-duty memo in her possession and inquired if it was the document Mr. Thackston was referring to.

63.    On December 14, 2018, SFC Garcia issued a memorandum stating that Mr. Thackston would assume the duties of a pharmacy technician effective January 8, 2019.

64.    In late 2018 or early 2019, Ms. Andrea Dowdy from HR informed him that his "reasonable accommodation" was no longer valid, citing his failure to provide additional medical documentation promptly. Despite lacking clearance from the "unfit-for-duty" determination, he was "returned to the pharmacy as a pharmacy technician."

65.    On January 4, 2019, in response to the questions Mr. Thackston posed on December 27, 2018, Ms. Andrea Dowdy (HR) provided answers to Ms. Anna Virdell (BAMC Legal).

66.    On January 15, 2019, HR officials, Ms. Maria Rodriguez, Ms. Diana Gutierrez, and Ms. Isabel Ramirez, refused to assist Mr. Thackston in understanding and clarifying the details of his reasonable accommodation request.

67.    On January 18, 2019, SFC Garcia informed Mr. Thackston that "*the organization will honor the permanent restrictions received in 2014.*"

68.    On March 27, 2019, Plaintiff met with Ms. Dowdy, Mr. Connolly, and SGT Ladenna Ruiz to discuss issues with the ongoing requests for medical documentation and to gain clarity about the "partial approval" of his 2014 reasonable accommodation request.

69.    On March 27, 2019, SSG Ruiz requested additional medical documentation from Mr. Thackston.

70.     On April 9, 2019, Ms. Maria Rodriguez (HR) sent an email detailing the Partial Approval of Mr. Thackston's reasonable accommodation request. It read, in part, based on his latest email, which states that he has not asked for any modifications to the provided accommodations and if he feels that his condition changes and/or he requires accommodation beyond what the Pharmacy is accommodating at this time, he will then provide documentation. Therefore, Mr. Thackston continued, in the position that he was currently in, with his current limitations. He would be doing what he's currently doing but within his limitations. This will be considered a Partial Approval.

71.     In April or May 2019, Plaintiff was allowed to resume work as a pharmacy technician at the Moreno Pharmacy, adhering to work restrictions prescribed by Dr. Grover Yamane from BAMC Occupational Health. These restrictions were communicated to the management before he underwent the fitness-for-duty examination. He continued his employment as a pharmacy technician at the Moreno Pharmacy until being forcibly reassigned to the Main Outpatient Pharmacy a few months ago. COL Stacey Causey initiated the move to allow him to investigate his claims of a hostile work environment (HWE). Despite facing overbearing supervisors and enduring a HWE characterized by ongoing discrimination and retaliation, he consistently performs exceptionally well and arguably stands as one of the most productive, dedicated, and reliable technicians within the BAMC Pharmacy department.

72.     On May 17, 2019, MAJ Everett and SSG Ruiz claimed that neither of them were aware of the unfit-for-duty determination. MAJ Everett stated that if an unfit-for-duty determination was made then it would be illegal for pharmacy to have returned Plaintiff to duty as a pharmacy technician.

73.     On May 17, 2019, MAJ Everett and SSG Ruiz denied clarification regarding the partial approval status of the reasonable accommodation and denied Union representation, and MAJ Everett made a termination threat when discussing the unfit-for-duty memorandum. He provided that if an unfit-for-duty memo existed and was located, he'd hate to lose Plaintiff as a pharmacy technician.

74.     On May 17, 2019, MAJ Everett, SFC Garcia, and SSG Ruiz modified Mr. Thackston's appraisal. This day MAJ Everett and SSG Ruiz required Mr. Thackston to sign a memorandum titled "Partial Approval of Request for Reasonable Accommodation (RA)."

75.     On May 29, 2019, MAJ Everett, SFC Mariluna Garcia, SSG Ruiz, and Mr. Anthony Elliott declined to correct Mr. Thackston's appraisal rating as previously agreed upon on May 17, 2019.

76.     Between May 29, 2019, and August 5, 2019, Mr. Thackston's repeated inquiries regarding the status of a reasonable accommodation request made in 2014 were unanswered or disregarded.

77.     On August 6, 2019, CPT Lo instructed Mr. Thackston to begin working at pharmacy windows 1, 2, or 3 starting from August 7, 2019. CPT Lo denied Mr. Thackston's right to union representation.  This same day Ms. Soboleski and CPT Lo refused to allow Mr. Thackston to take an authorized 15-minute break.

78.     On August 8, 2019, Mr. Thackston requested that SSG Ruiz provide all documentation regarding the reasonable accommodation he requested in 2014.

79.     On August 12, 2019, SSG Ruiz requested additional medical documentation to support Mr. Thackston's Family and Medical Leave Act (FMLA) leave request.

80.     On August 28, 2019, SSG Ruiz and CPT Lo did not provide Mr. Thackston with an opportunity to attend a monthly in-service training.

81.     On September 30, 2019, Ms. Rachel Newby (EO Specialist) completed her EEO Counselor's report. In her report, she attributed the following to LTC Everett: "*The aggrieved's RA was responded to by management as he was provided the appropriate physical accommodations based on his 2014 reasonable accommodations memo…LTC Everett added that the aggrieved has relentlessly accused management of not accommodating him; he has made supervisors uncomfortable in their interactions with him as he has refused to assist in resolving his situation. LTC Everett also stated that the aggrieved has been offered to move to Pharmacy Supply as an additional accommodation, but he refused the latter. Many of his peers have expressed displeasure with his interactions with management and it has been perceived he is receiving special treatment.*"

82.     On November 8, 2019, Mr. Thackston asked LTC Everett and COL Causey about the lack of diversity at the Moreno Pharmacy. Mr. Thackston had recently become aware of the staff expressing displeasure with his interactions with management and felt that he was receiving special treatment (apparently due to the limitations management was honoring). Mr. Thackston reminded his senior leadership that he was the only male working the frontline among the 20 or so employees at the Moreno Pharmacy. Mr. Thackston offered, "*While I tend to enjoy working with my current coworkers, allowing for a more diverse staff may help remedy how many of my peers see me.*"

*Plaintiff's Original Complaint*                                    Page **17** of 39

83.    On November 12, 2019, LTC Everett responded to Mr. Thackston's email stating he was unsure of what Plaintiff was asking. Since, as far as his peers, if there is any issue, Plaintiff was encouraged to address it with them professionally.

84.    On November 13, 2019, Mr. Thackston responded to LTC Everett's email: '*I'm simply responding to what was provided to Ms. Newby when she inquired with management about my complaint. According to her report, many of my peers have a problem with me. I don't necessarily have a problem with them; I don't understand what their issues are with me. Please know that not one of my coworkers has expressed any concerns with me. I only learned of my coworkers' complaints about me from the responses management gave to an EO specialist's questions*."

85.    On November 13, 2019, LTC Everett stated, that he could not speak to what Ms. Newby provided Plaintiff about his coworkers' thoughts or feelings."

86.    On December 10, 2019, Mr. Thackston inquired with Ms. Soboleski about completing an ergonomic study concerning his current accommodation but received no response.

87.    On January 7, 2020, Mr. Thackston received a memo from Dr. William Hoffman (BAMC Internal Medicine). The memo read, in part, "*I am writing to you regarding my patient, Mr. Robert Thackston, to request and provide support for reasonable accommodations at work*."

88.    On April 7, 2020, Ms. Soboleski provided via a timeline she was keeping concerning Mr. Thackston, and that he allegedly advised her that he was going to cancel his request for an ergonomic study due to it requiring medical documentation and he stated his medical has not changed since 2014. Soboleski also stated she asked Maria Rodriguez, the Disability Program Manager, to confirm that Robert Thackston's chair was ergonomic. She stated that yes it was an

ergonomic chair. Reality is that said chair was the same one that Robert was using while assigned previously to the kiosk desk, before Plaintiff's assignment at Moreno.

89.     On April 15, 2020, Mr. Thackston received an unsatisfactory performance rating without receiving adequate feedback, documentation, training, counseling, or a performance improvement plan.

90.     On June 9, 2020, Ms. Soboleski presented Mr. Thackston with a memo stating if he chooses not to provide the requested medical documentation the Agency may be forced to take administrative action to include removal from Federal Service.

91.     On June 16, 2020, Ms. Soboleski sent Mr. Thackston an email stating, "*I hear that you were searching for the Disability Program Manager's (DPM) contact info. I was able to get this for you: Disability is centralized through Army Benefits-Center-Civilian, the website is https://abc.arny.mil and phone number is 877-276-9287.*" A supervisor's memo, dated May 17, 2019, referenced a DPM log number (AR-BAMC-19-020), but Mr. Thackston was given the run-around instead of simply identifying the DPM.

92.     On June 17, 2020, Mr. Thackston contacted a representative at the Army Benefits Center. He was told there was nothing on file concerning him and was urged to continue seeking answers at the local level.

93.     On June 18, 2020, Mr. Thackston met with COL Causey who provided that an "official process" was not followed so no reasonable accommodation was provided.

94.     On June 29, 2020, Mr. Thackston reached out to Ms. Maria Rodriguez (Reasonable Accommodation Representative, Human Resource Specialist) regarding his supervisor's repeated

requests for medical documentation, the partial approval of his 2014 reasonable accommodation request, and contact information for the Disability Program Manager.

95.     On July 29, 2020, Ms. Soboleski sent Mr. Thackston an email stating, that although Plaintiff had a fitness for duty evaluation determining he was unfit in his position, it appears he had been accommodated in your position by not performing all the position's essential functions. She also stated that after speaking with Ms. Gutierrez, they can move forward without updated medical records. She stated that it would be best for Plaintiff to pick up the RA process, which would either be looking to see if there is another vacant funded position for you or with simply requesting to pursue disability retirement.

96.     On June 30, 2020, Ms. Soboleski sent an email to Mr. Thackston stating, "*The Agency is requesting medical documentation from your physician(s). Occupational Health is not your treating physician we request information from your primary physician to allow for accurate information on your current condition. The due date is July 8, 2020*." This request was similar to the fit-for-duty examination Mr. Thackston was required to complete in 2014.

97.     On July 11, 2020, Mr. Thackston received an email from COL David Duplessis. He provided Ms. Diana Gutierrez as the DPM. Interestingly, Mr. Thackston had previously spoken with Ms. Gutierrez, but she chose not to identify herself as the DPM. He assured me that "*our legal counsel is aware of BAMC's reasonable accommodation (RA) process, serves as our subject matter expert and does ensure BAMC follows applicable accommodation and EEO rules; she may be able to answer your questions about BAMC's RA process*."

98.     On July 28, 2020, Mr. Thackston was not selected for an award under the Pharmacy's Technician Incentive Program.

*Plaintiff's Original Complaint*                                        Page **20** of 39

99.    On August 5, 2020, Mr. Thackston received an email from Ms. Latisha McCarthy, President, of AFGE Local 1004. Her email stated, in part, that Ms. Soboleski has moved forward with the RA process, and if it's denied, they will look for another position somewhere else and depending on your skillset, not a guarantee that they would find Plaintiff something.

100.    On August 6, 2020, Mr. Thackston received a memorandum stating that he could no longer be accommodated in his current position. Mr. Thackston was asked to fill out an Employee Options Form. The form read, in part, '*Since no reasonable accommodation is available/feasible at any current job/position, the following options will be considered in finding me reasonable accommodation.*" Mr. Thackston was also asked to provide a resume that would help the Agency perform a job search for an available position.

101.    On August 6, 2020, Ms. Soboleski issued a memorandum requesting that Mr. Thackston submit a resume for consideration for reassignment.

102.    On August 13, 2020, Dr. Lisa Townsend, (Internal Medicine), issued a letter stating that Mr. Thackston did not require any work restrictions.

103.    On August 13, 2020, Mr. Thackston provided SGT Blow a doctor's note allowing him to perform all pharmacy duties without any work restrictions.

104.    On August 28, 2020, Mr. Thackston met with COL Chad Koenig and Ms. Anna Virdell to determine if a climate assessment could be ordered for the Moreno Pharmacy.

105.    On August 31, 2020, Ms. Soboleski issued a memorandum that returned Mr. Thackston to full duties as a pharmacy technician with no restrictions.

106.    From December 31, 2019 to August 20, 2020, LTC Everett, COL Causey, and COL Koenig, the Director of Clinical Support, failed to address Mr. Thackston's concerns regarding ongoing discrimination and workplace hostility.

107.    On January 5, 2021, SSG Ruiz provided testimony that Mr. Thackston cornered her in her office, shut the door, and stood in front of it so Ruiz could not leave. This never happened. Mr. Thackston only learned of this accusation after reading a declaration provided during an EO complaint investigation.

108.    On July 6, 2021, Mr. Thackston learned that he was not selected for job vacancy announcement # NCMD211294942235HW, with hiring official Mr. Alfredo Paez.

109.    On October 20, 2021, Ms. Soboleski unfairly counseled Mr. Thackston for working off the clock, despite having previously permitted himself and others to do so.

110.    On October 20, 2021, Mr. Thackston reached out to CH Stanley Smith. He asked CH Smith if he could assist with facilitating an EO focus group or sensing session.

111.    On October 28, 2021, LTC Everett denied Mr. Thackston's vault and supply training, and SGT Jesse Alvarado was present during the meeting. Mr. Thackston felt disadvantaged in multiple job vacancies due to practices that restricted his access and the denial of training opportunities.

112.    On January 21, 2022, SFC Grandison and SGT Blow once again denied Mr. Thackston the opportunity to receive training in the vault and/or supply. In late 2021, during an office visit, SGT Blow explained that in lieu of hiring, COL Causey "appointed" specific individuals to vault and/or supply positions.

113.    On April 18, 2022, Mr. Thackston sent an email to SGT Blow and Ms. Soboleski stating, "*Please consider allowing one of the windows to position the monitors as they were prior to 15 Apr 2022. The current setup is uncomfortable and causes unnecessary discomfort for me. I understand the change is due to standardizing across the pharmacies but ask if consideration could be given to my issue. If management is not amenable, please let me know and I'll inquire if my doctor can engage to assist with a reasonable accommodation.*"

114.    On April 22, 2022, SGT Blow and Ms. Soboleski downgraded multiple elements in Mr. Thackston's performance appraisal from a rating of 5 (Outstanding) to 3 (Fully Successful) without providing proper justification.

115.    On April 25, 2022, SGT Blow failed to respond appropriately to workplace study recommendations provided by Industrial Hygiene. As of June 14, 2023, despite SGT Blow previously offering that chair for the entire department had been ordered, no changes have been made. The Main Outpatient Pharmacy received new chairs as of November 2023.

116.    On April 28, 2022, Mr. Thackston sent an email to SGT Blow stating, "*Please hold off on my request for a reasonable accommodation (RA) unless required as a last resort. I'm uncomfortable with the RA process and would prefer to avoid that avenue if I can…To be clear, please withdraw my RA request and do as you can to allow for the ergonomic study as requested by my Internal Medicine provider.*"

117.    On April 28, 2022, SGT Blow responded to Mr. Thackston's email stating they were going to go ahead with the reasonable accommodation.

118.    On April 29, 2022, Mr. Thackston responded to SGT Blow's email stating, "*Please provide the POC you're working with concerning the reasonable accommodation. I'm*

*Plaintiff's Original Complaint*                                          Page **23** of 39

*uncomfortable moving forward with a reasonable accommodation as a previous request almost resulted in my being removed from the department. If management is not amenable to allowing for an ergonomic study then I'll look into whether other avenues exist to address the matter."*

119.    On April 29, 2022, SGT Blow responded to Mr. Thackston's email providing, he would hold off on RA.

120.    On May 2, 2022, Mr. Thackston provided a request for an ergonomic survey to SGT Blow for his approval.

121.    Sometime between Mr. Thackston's initial request to SGT Blow for an ergonomic study and SGT Blow's submission of the request to Mr. Kenneth Berry (BAMC Industrial Hygiene) to complete it, several of Mr. Thackston's coworkers (Ms. Wendy Harris, Ms. Pat Wongsuwan, Ms. Maria Glover and Ms. Regina Bell-Cunningham) subsequently requested an ergonomic study as well.

122.    On May 3, 2022, SFC Grandison and SGT Devontea Blow denied Mr. Thackston training in the vault and supply, and Ms. Soboleski was included in the corresponding email communication.

123.    On May 19, 2022, Mr. Thackston received notification that he was not selected for job vacancy announcement # NCMD226l 66027762HW, with hiring official Mr. Alfredo Paez.

124.    On June 9, 2022, a Jennifer Moreno Clinic Pharmacy ergonomic evaluation was completed by Mr. Kenneth Berry. He made the following recommendations: "*It is recommended that the pharmacy window workstation monitors be adjusted to a side-by-side configuration such that both monitors can be adjusted up to a point where they align with multiple employee eye lines. If the window size will not allow this to be done in such a manner it interferes with the performance*

of pharmacy dispensary duties, then it is recommended that the adjustable monitor arms be replaced or repositioned in such a manner they will adjust further down that they presently do. Additionally, the current chairs (broken and working 'low chairs' and the window workstations) should be replaced with the "high" ergonomic chairs that come with the adjustable footrestnring and have both adjustable armrests."

125.    On June 17, 2022, Mr. Thackston sent Sargent Blow via a text message: "*Management is well aware that the window set up is extremely uncomfortable for many of its employees, but supervisors appear to be indifferent about the matter. Pls consider assigning a window/filler tech on the schedule to avoid potential conflict between coworkers not opting to sign in at a window. Personally, the pain I frequently experience when working the window makes it difficult to volunteer to work at them. Respectfully, I understand how busy a supervisor's job can be, but is it possible for management to assist at the window whenever we're short-staffed; that would be a tremendous help. Lastly, pls allow an occasional technician huddle so that these kinds of issues can be better communicated. Doing so via text is not the best option IMO. Thanks for your consideration*."

126.    On June 17, 2022, SGT Blow responded with the following text they were fully aware of his concerns on the ergonomic study that was conducted and they were still waiting for the report if there is no change we will move forward with Reasonable accommodation.

127.    On June 17, 2022, Mr. Thackston responded with the following text message: "*Sir, you are aware of the issues, so I won't belabor the point. Is management available to assist at the windows during manning challenges? We can discuss the ongoing concerns again off-line if necessary*."

128.    On June 17, 2022, SGT Blow responded they could assist but again this is only when they have their requirements.

129.    On June 17, 2022, SGT Blow received the ergonomic study report for the pharmacy, along with SFC Jordan Grandison and Ms. Soboleski. They also provided a hyperlink to a training packet for office ergonomic training outlining proper office workplace set up. (*https://www.iwh.on.ca/archive/eofficeergo/en/index.html*).

130.    On June 18, 2022, Mr. Thackston sent the following text message to SGT Blow: "*Since this is the only avenue provided to discuss our issues openly, I need for management to appreciate how hostile the Moreno pharmacy work environment has become. Yes, I'm familiar with EO/union channels to address these concerns and currently awaiting assistance from their offices. Nevertheless, immediate attention is needed. Management seems oblivious to how overly stressed out the staff is. Col Causey spoke to the manning issues, but the Moreno staff continues to excel despite that. We're kind of use to it, so we all just grin and bear it to get the job done. What I hear daily though are concerns about preferential treatment and managers seemingly refusing to get in the trenches with the staff when we need them most.*" During this struggle, at one point, workers in Moreno had 53 patients in the queue with close to a two-hour wait

131.    On January 19, 2022, Mr. Thackston emailed COL Causey, LTC Everett, CPT Darren Hamilton, Ms. Soboleski and SGT Blow. He inquired if it were possible for any interested staff to be appointed to one of the individual pharmacy's vault or supply positions.

132.    On June 30, 2022, Mr. Thackston was interviewed by COL Barbara Bowsher, investigating officer for a 15-6 inquiry intended to look into harassment concerns Mr. Thackston made with Mr. Timothy Harris (EO Specialist).

133.    On June 30, 2022, COL Bowsher provided Mr. Thackston with interview questions and a blank sworn statement to be completed by COB, July 7, 2023.

134.    On July 1, 2022, Mr. Thackston attempted to work on the interview questions but was brought into SGT Blow's office for not prioritizing the window. Mr. Thackston emailed COL Bowsher inquiring if she could assist with authorizing official time to complete the interview questions she provided.

135.    On July 5, 2022, Mr. Thackston emailed COL Bowsher, informing her that he'd completed the interview questions. Mr. Thackston added, "*SGT Blow hasn't been very accommodating concerning allowing official time.*"

136.    On July 5, 2022, Mr. Thackston was not selected for the Pharmacy Technician Incentive Program Technician of the Quarter, 2nd Quarter, despite having higher productivity than both the winner and the runner-up at the Moreno Pharmacy.

137.    On July 29, 2022, Ms. Cheryl Soboleski authorized overtime for three of her coworkers and herself but instructed Mr. Thackston to adhere to his original schedule and leave as planned.

138.    On August 2, 2022, Mr. Berry provided, as discussed with SGT Blow, that almost all of the pharmacies shared these same ergonomical problems and that if a furniture packet was going to be purchased to replace chairs, it should replace them all.

139.    On August 4, 2022, Mr. Thackston participated in a pre-complaint mediation session with COL Richter and Ms. Porter. None of the claims currently under review by the Administrative Judge were discussed during the session.

140.     On August 5, 2022, Mr. Thackston learned that SFC Grandison had drafted a memo dated August 4, 2022. The memo bore the office symbol MCHE-TC-D. SFC Grandison falsely stated, that when addressing workplace diversity with Plaintiff, he stated that he wanted "more male leadership" within the pharmacy.

141.     On August 19, 2022, Mr. Thackston received notification that he was not selected for job vacancy announcement # NCMD226776752665HW, with hiring official Mr. Alfredo Paez.

142.     On August 30, 2022, Mr. Thackston sent an email to COL Steven Richter, the Director of Clinical Support, and Ms. Safiya Porter, the BAMC Attorney, reiterating his request for an EO focus group/sensing session for the entire Pharmacy department.

143.     On September 28, 2022, Ms. Soboleski contacted Mr. Berry about the ergonomic study that was completed. She stated that the department had placed a large furniture purchase request for the entire pharmacy.

144.     On October 11, 2022, Mr. Berry sent Ms. Soboleski a copy of the June 9, 2022 survey and reminded her that the survey was 4-months old. He provided that since the furniture had not yet arrived and nothing else had been changed on the recommendations there was no purpose in conducting a new survey. Mr. Berry informed Ms. Soboleski that a new survey would not be performed until at least the new chairs arrived and were in use.

145.     On December 15, 2022, Ms. Soboleski stated that the pharmacy ordered the new recommended chairs for every pharmacy, even though Moreno was the only pharmacy that the study was completed in.

146.    On December 15, 2022, Ms. Soboleski provided that there was "no penalty" for SGT Blow's written reminder about the unauthorized possession of a CAC card. Even still, Mr. Thackston's appraisal was downgraded due to the incident.

147.    On December 15, 2022, Ms. Soboleski provided a declaration under penalty of perjury that "*Mr. Thackston has also been spoken to regarding his fill numbers because he puts in his credentials and takes credit for prescriptions filled by our robot...doing this inflates his numbers as compared to others who do not.*" Mr. Thackston believes management's consistent undermining of his performance further inflames the already hostile work environment and the discrimination he suffered. When discussing some of the issues during a meeting with COL Richter, Ms. Soboleski made the same false assertion.

148.    On December 23, 2022, Ms. Pat Wongsuwan (Moreno Pharmacist) described the Moreno Pharmacy work environment as "*often very stressful and sometimes hostile.*" She added, that Supervisor's favoritism toward certain individuals seemed to add to the hostile environment. When asked about unchecked workplace hostility and preferential treatment, Ms. Wongsuwan provided, that the supervisor would not address tardiness, uneven workload, and taking longer breaks and lunches than scheduled. When asked about the persistent harassing and inciting behavior of supervisors toward Mr. Thackston, she answered, that she had observed that the supervisors seemed to watch Mr. Thackston more closely and monitor his breaks/lunch times, stating she noticed they would question when he left for breaks/lunches and when he returned. Ms. Wongsuwan was asked why do you believe SGT Blow, Ms. Soboleski and LTC Everett harassed, demeaned or intimidated Mr. Thackston. She responded, that would be because Mr. Thackston brings issues to their attention that they do not want to address, and that she noted that he has been

treated differently than other technicians since he would be closely watched on his performance daily.

149.    On December 28, 2022, Ms. Wendy Harris (Moreno Pharmacist) described the work environment as "stressful and borderline hostile." She also stated, favoritism exists between supervisors and certain staff members up to and including inappropriate interactions outside of the workplace. When asked if she reported the hostile work environment, she replied, "*No, for fear of retaliation and worsening hostilities.*"

150.    On January 11, 2023, Ms. Maria Glover (Moreno Pharmacy Technician) described the work environment at the Moreno Pharmacy as "hostile, stressful, and (tense)." She further commented that supervisors "show favoritism" Ms. Glover also stated, that supervisors only refer to certain individuals when putting information out. Only certain people are questioned about certain things.

151.    On January 12, 2023, Ms. Patricia Brooks (Moreno Pharmacy Technician) provided a witness statement to Ms. Cynthia Carpenter (EO Investigator). She expressed that "*leadership in this pharmacy is non-existent; the favoritism is blatant, micro-management at its finest.*" She also shared that the favoritism is so bad that they use their favorites to act as watchmen on certain employees, while these favorites can do whatever they want, whenever they want, and never suffer consequences.

152.    On January 19, 2023, CPT Kramer sent an email to the Moreno Pharmacy staff regarding ScriptPro. A few changes to metrics were either started or modified in the name of fairness to all team members, and now trhey would be filtering out all prescriptions filled by the robots. What this means is that even though everybody will take a small hit in their fill numbers..

153.    On February 2, 2023, COL Stacey Causey, the Pharmacy Commander, forcibly reassigned Mr. Thackston from the Moreno Pharmacy to the Main Outpatient Pharmacy due to his raised concerns regarding a hostile work environment (HWE). The proposal presented to the union contrasted significantly with the actual reason behind the reassignment.

154.    On February 6, 2023, Ms. Beverly Clay (Moreno Pharmacist) provided a witness statement to Ms. Carpenter. Ms. Clay provided, in part, "*I can say the atmosphere of our workplace has deteriorated over the years. Morale is the lowest I've seen since I've worked here (11 years at the Moreno Pharmacy) and I feel that is a reflection on our current Moreno Pharmacy leadership. I don't want to say more about the leadership for fear of retaliation*."

155.    On February 7, 2023, Ms. Wilson, the MOP Supervisor, inquired via text message about Mr. Thackston's access to DMLSS.

156.    Sometime in February 2023, Mr. Thackston had a meeting with CPT Christopher Kramer, the Senior Pharmacy Supervisor at the Main Outpatient Pharmacy (MOP). During the meeting, CPT Kramer inquired about Mr. Thackston's progress since being reassigned and expressed his perspective that Mr. Thackston was performing exceptionally well. CPT Kramer emphasized the importance of ensuring that Mr. Thackston receives the supply training he had requested.

157.    On April 1, 2023, Mr. Thackston submitted a request for supply training as part of his individual training plan (IDP). His supervisor approved the request on April 3, 2023. Mr. Thackston mentioned. The IDP was updated on June 7, 2023.

158.    On June 2, 2023, Mr. Thackston learned that Ms. Patrice Maximo and Ms. Daniela Estevez were recently provided access to DMLSS (supply management IT system). It appears Ms.

Bea Fernandez may have also just gained access. Mr. Thackston recognizes that DMLSS access is restricted to a certain number of individuals, nevertheless, he believes he should have been included in the group. Recognizing that Ms. Maximo and Ms. Estevez are relatively new to BAMC Pharmacy, some consideration should be given to the fact that Mr. Thackston has sought to regain DMLSS access since his privileges and government purchase card were revoked in 2014.

159.    On January 30, 2024, Ms. Soboleski selected Ms. Jasmine Raya to attend a Supply Tech/DMLSS training scheduled for February 07, 2024. Mr. Thackston has consistently requested but has been denied this training without explanation for years. Interestingly, Ms. Raya was previously a contractor who was recently hired as a GS pharmacy technician within the last several months.

160.    Mr. Thackston's repeated requests for an EO focus group/sensing session were denied. There was a prevailing belief among the staff that supervisors exhibited preferential treatment and favoritism by selecting specific individuals for easier paths to earn monetary awards, specialized training, coveted positions, exemptions from mandatory work rotations, and exclusion from training students or working later work shifts. The inaction from management contributed to a hostile work environment, leading Mr. Thackston to view EO channels as the singular recourse to address these concerns.

161.    In addition to a number of individuals within the Pharmacy department, Mr. Thackston reported his concerns involving harassment, discrimination, and intolerable working conditions to at least the following individuals: COL Stacey Causey (June 22 2020), COL David Duplessis, DCPS (July 8, 2020), COL Chad Koenig, DCPS (August 28, 2020), COL Gwendolyn Thompson, Chief, Department of Pharmacy (January 16, 2018), Ms. Mildred Lugo, Union

President (November 21, 2014), CPT Darren Hamilton (March 10, 2021), CH (COL) Stanley

Smith (October 20, 2021), LTC Christopher Everett (October 29, 2021), Ms. Eivi Widas, Inspector

General (May 12, 2021), CPT Christopher Kramer (November 25, 2022), SFC Jose Ortiz (October

4, 2019), Ms. Martha Acosta, HR (April 12, 2016), SFC Jordan Grandison, NCOIC, Department

of Pharmacy (January 21, 2022), SFC Reynold Lara, BAMC EO (May 2021), SFC Robert Kryger,

BAMC EO (May 2021), Ms. Randi Stipe, Inspector General (August 20, 2020), Ms. Chavez Aiu,

Union President (September 1, 2021), COL Todd Reeder (January 5, 2023), CSM Thomas Oates

(January 8, 2019) CSM Tabitha Gavia (June 10, 2014), Latricia McCarthy, Union President

(March 4, 2019) Ms. Andrea Dowdy, LMER (December 27, 2018), Ms. Lou Anne Reiser, LMER

(April 8, 2016), Mr. Troy Phillips, LMER (Mar 28, 2016), Ms. Michele Smith, HR (February 9,

2016), Ms. Janelle Allen, Inspector General (February 12, 2016), Ms. Maria Rodriguez, HR (June

6, 2019), Ms. Diana Gutierrez, HR (June 27, 2019) Ms. Isabel Ramirez, HR (July 3, 2019).

## VI.    CAUSES OF ACTION

### NO. 1 – DISABILITY DISCRIMINATION
### UNDER THE REHABILITATION ACT (29 U.S.C. 791 et seq.)

162.    Plaintiff incorporates by reference all of the foregoing allegations in each of the

paragraphs above as if fully set forth herein.

163.    The Plaintiff's case is grounded in the principles of the Rehabilitation Act, 29

U.S.C. 791 et seq.;  (RA), which provides comprehensive civil rights protections to individuals

with disabilities.

164.    Plaintiff is an individual with a disability (neuropathy, migraine, plantar fasciitis,

and degenerative back issues).

*Plaintiff's Original Complaint*                                    Page **33** of 39

165.    Plaintiff's disability (neuropathy, migraine, plantar fasciitis, and degenerative back issues), is a physical or mental impairment that substantially limits one or more major life activities, including, but not limited to, performing manual tasks, sleeping, walking, standing, lifting, bending, to name a few.

166.    Plaintiff is a qualified pharmacy technician and was more than qualified for promotions into GS-07 and GS-08 positions.

167.    Defendant is a program or activity receiving Federal financial assistance.

168.    Plaintiff alleges he was discriminated against solely by reason of his disability because he was denied multiple promotions while similarly situated non-disabled employees were promoted into these positions. Plaintiff asserts he was equally or more qualified than the applicants selected over him and the only difference is Plaintiff has a disability.

169.    In the case of our client, it is clear that the conditions precedent for an RA claim have been met. First, our client is a person with a disability as defined by the RA, as he suffers and has suffered through his employment from neuropathy, migraine, plantar fasciitis, and degenerative back issues. Second, the Defendant is aware of this disability. Finally, Defendant refused to make such accommodations and discriminated against Plaintiff by denying his promotions solely because of his disability.

170.    Plaintiff is qualified for his position, and he could perform the job with reasonable accommodation. Plaintiff is also equally or more qualified than the applicants selected over him on each promotion or who was promoted into a GS-07 or GS-08 position from a GS-07 position.

171.    The Defendant's refusal to provide reasonable accommodation and failure to promote Plaintiff solely because of his disability constitutes a violation of the RA. Defendant's actions have caused Plaintiff to suffer harm, including lost wages and emotional distress.

## NO. 2 – RETALIATION
## UNDER TITLE VII (42 U.S.C. § 2000(e)(3))

172.    Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

173.    Title VII of the Civil Rights Act of 1964 prohibits employers from retaliating against employees who have opposed any practice made unlawful by Title VII or who have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

174.    Plaintiff has engaged in a protected activity by filing multiple complaints and EEO charges as noted above.

175.    Defendant took an adverse employment action against Plaintiff by failing to promote Plaintiff and denying Plaintiff wages that he is qualified to earn.

176.    A causal connection between Plaintiff's protected activity and the adverse employment action exists because the decisionmakers of Plaintiff's promotion were aware of Plaintiff's complaints and EEO charges and failed to promote Plaintiff.

177.    Plaintiff was not selected for the Pharmacy Technician Incentive Program Technician on several occasions, despite his performance. In 2022, this happened even when Plaintiff had had higher productivity than both the winner and the runner-up at the Moreno

Pharmacy, but for the Plaintiff's complaint of discrimination, the adverse employment action would not have occurred.

178.    The plaintiff was singled out for reassignment by COL Causey (Chief of Pharmacy) due to his stated concerns of retaliation and a hostile work environment.

179.    Therefore, Plaintiff has established a prima facie case of retaliation under Title VII, and the burden now shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action.

**NO. 3 – HOSTILE WORK ENVIROMENT**
**PURSUANT TO THE REHABILITATION ACT (29 U.S.C. 791 et seq.)**

180.    Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

181.    Plaintiff belongs to a protected group, disability - neuropathy, migraine, plantar fasciitis, and degenerative back issue.

182.    Plaintiff alleges he was harassed and not given equal opportunities to promotions and the harassment was based solely on his disability.

183.    The harassment, as identified above, affected the term, condition, or privilege of Plaintiff's employment because he was denied promotions and the pay increases that would have accrued over time. Defendant knew of Plaintiff's complaints of harassment based on his disability or Defendant, at minimum, should have known about the harassment and failed to take prompt remedial action.

184.    Furthermore, the harassment, as identified above, was sufficiently pervasive and severe, which altered the conditions of Plaintiff's employment by creating an abusive working

environment, and not allowing Plaintiff to get the same equal opportunities to be promoted and receive pay increases.

185.    The management's consistent undermining of the Plaintiff's performance, by falsely alleging that he was inflating his ticket numbers, further expanded the already hostile work environment. Plaintiff was subjected to unnecessary questioning about his disability on several occasions. This conduct is not only intrusive and disrespectful, but it also creates a hostile work environment. The repeated questioning about Plaintiff's disability has contributed to a continuous hostile work environment.

186.    Plaintiff's exposure to unnecessary questioning about his disability, false allegations, and continuously denying Plaintiff's promotion, is severe and pervasive, which together have created a hostile work environment in violation of Rehabilitation Act.

## VII.   DAMAGES

187.    Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a.    Back pay from the date of his non-selection to present, with interest;

    b.    Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    c.    All reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff;

    d.    All reasonable and necessary costs incurred in pursuit of this suit;

    e.    Compensatory damages and emotional pain;

*Plaintiff's Original Complaint*                                                    Page **37** of **39**

f.    Pre- and post-judgment interest;

g.    Mental anguish in the past; and

h.    Mental anguish in the future.

## VIII.    <u>JURY DEMAND</u>

188.    Plaintiff demands a trial by jury and has tendered the appropriate fee with this Original Complaint.

## IX.    <u>PRAYER</u>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Robert Thackston, respectfully prays that Defendant, Honorable Christine E., Wormuth, Secretary, of the Army, d/b/a Brooke Army Medical Center, be cited to appear and answer herein and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be justly entitled at law or in equity.

Respectfully submitted,

kennard law P.C.

**Alfonso Kennard, Jr.**
Texas Bar No. 24036888
**Eddie Hodges Jr.**
Texas Bar No. 24116523
Kennard Law, P.C.
5120 Woodway Dr., Suite 10010

Houston, Texas 77056
Main: 713.742.0900
Fax: 832.558.9412
Email: filings@kennardlaw.com
Email: alfonso.kennard@kennardlaw.com
Email: eddie.hodges@kennardlaw.com
**ATTORNEYS FOR PLAINTIFF**