IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

ROBERT THACKSTON,                  §
                                   §
              *Plaintiff,*          §              SA-24-CV-00276-FB
                                   §
vs.                                §
                                   §
DANIEL P. DRISCOLL, SECRETARY      §
OF THE ARMY;                       §
                                   §
              *Defendant.*          §
                                   §
                                   §

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Daniel P. Driscoll's[1] Motion to Dismiss First Amended Complaint [#15]. The District Court referred this case to the undersigned for all pretrial proceedings on August 8, 2024 [#18]. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned will recommend the District Court **GRANT IN PART and DENY IN PART** the motion, as set forth herein.

## I.  <u>Background</u>

Plaintiff Robert Thackston filed this suit against the Secretary of the Army, d/b/a Brooke Army Medical Center, alleging discrimination, retaliation, and a hostile work environment under

---

[1] As of February 25, 2025, Daniel P. Driscoll is the Secretary of the Army. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Daniel P. Driscoll is automatically substituted for former Secretary Christine E. Wormuth.

the Rehabilitation Act.[2] (Am. Compl. [#14], ¶ 5.) Plaintiff alleges that he was discriminated against and harassed as someone with a disability and that he faced retaliation due to engaging in protected activity. Plaintiff does not specifically plead that he exhausted his administrative remedies. According to Defendant, Plaintiff filed EEO charges in February 2015, May 2019, and September 2022. Plaintiff does not attach his charges to his Amended Complaint, but Defendant has provided a Westlaw citation to the administrative decision resolving the 2015 charge, as well as other EEOC documents from 2019 and 2022 charges. The undersigned may consider the Department of the Army's Final Action [#15-2] on his September 2022 charge, which is explicitly referenced in Plaintiff's Amended Complaint (Am. Compl. [#14], ¶¶ 10–11) and is central to his claim.[3] *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The undersigned may also consider the EEOC's decision on Plaintiff's 2015 charge, which is on Westlaw as a public record. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

Adhering to Judge Biery's Standing Order, Defendant notified Plaintiff that he intended to file a motion to dismiss; Plaintiff informed the Court that he would file an amended complaint [#10]. After the District Court granted a joint motion for extension of time, Plaintiff timely filed

---

[2] The Amended Complaint also makes passing references to Title VII. The undersigned has construed Plaintiff's claims as only arising under the Rehabilitation Act, consistent with the Causes of Action section of the Amended Complaint.

[3] As Defendant points out, the Amended Complaint is not explicitly clear on which EEO charge this lawsuit is based on. Plaintiff cites an EEO charge dually filed with the EEOC and Texas Workforce Commission on February 24, 2019, and for which he received a Notice of Right to Sue on December 20, 2023. (Am. Compl. [#14], ¶¶ 10–11.) The Notice he received on December 20, 2023, however, was for his third EEO charge, filed in September 2022. Additionally, the EEOC charge number he cites in his Amended Complaint—451-2023-00083X—is the case number listed on the December 2023 Notice of Right to Sue. Based on the date provided for the Notice of Right to Sue and the charge number provided, the undersigned has construed the Amended Complaint as being based on the September 2022 EEO charge.

his Amended Complaint [#14]. Defendant subsequently filed a Motion to Dismiss First Amended Complaint [#15] under Federal Rule of Civil Procedure 12(b)(6); Plaintiff responded [#19]; and Defendant replied [#22]. The motion is ripe for the Court's review.

## II.    <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level" and must "give the defendant fair notice" of the claim and "the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In an employment discrimination case, the plaintiff need not "submit evidence to establish a prima facie case of discrimination" at the motion-to-dismiss stage. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). The plaintiff must, however, "plead sufficient facts on all of the ultimate elements" of the discrimination claim. *Id.*

In reviewing a motion to dismiss under Rule 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim*, 836 F.3d at 469 (citing *Iqbal*, 556 U.S. at 678). In short, a

claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the plaintiff's pleadings without converting the motion to a motion for summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d). The Court may, however, consider documents attached to the complaint and those that are central to the claims at issue and incorporated into the complaint by reference. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Adams v. Columbia/HCA of New Orleans, Inc.*, 2023 WL 2346241, at *2 n.4 (5th Cir. March 3, 2023) (per curiam) (confirming that the district court properly considered the plaintiff's EEOC charge in deciding a motion to dismiss where the charge was attached to the motion to dismiss and referenced in the complaint).

"[D]ismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense" when the defense "appear[s] on the face of the complaint." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 470 (5th Cir. 2006); *see also Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021). Failure to exhaust administrative remedies under the Rehabilitation Act is an affirmative defense. *See Lopez v. Kendall*, No. 22-50411, 2023 WL 2423473, at *1–2 (5th Cir. Mar. 9, 2023) (citing *Ft. Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019)) ("Because it is a mandatory claims processing rule, not a

jurisdictional requirement, failure to exhaust administrative remedies under Title VII is an affirmative defense.")[4]

### III. Allegations

According to the facts pleaded in Plaintiff's Amended Complaint, Plaintiff has worked in the Brooke Army Medical Center Pharmacy since April 2011. (Am. Compl. [#14], ¶ 12.) He alleges that he is an individual with a disability and specifically, that he has medical conditions (including neuropathy, migraine, plantar fasciitis, and degenerative back issues) that substantially limit one or more of his major life activities, including performing manual tasks, sleeping, walking, standing, lifting, and bending. (Am. Compl. [#14], ¶¶ 16, 166.) One physician stated in 2013 that his conditions "require limited weight-bearing activities with frequent rest periods for prolonged standing/sitting"; another physician, Dr. Grover Yamane, imposed the restriction in April 2014 of "no bending, stooping, squatting, and to limit standing/walking to 30-60 minutes at a time." (Am. Compl. [#14], ¶¶ 14, 19.)

In 2014, Plaintiff began the process of requesting reasonable accommodations. (Am. Compl. [#14], ¶ 15.) According to Plaintiff, the Pharmacy agreed in April 2014 to provide him with reasonable accommodations by allowing him to work "within the prescribed limitations set by Dr. Yamane." (Am. Compl. [#14], ¶¶ 19–20.) The pleadings are not clear about how long the accommodation of these limitations was provided by Defendant.

In June 2014, Plaintiff allegedly "learned management would no longer support any accommodations previously granted." (Am. Compl. [#14], ¶ 25.) Yet, it appears that he continued to work as a pharmacy technician, as he alleges that he worked "as the primary vault

---

[4] Claims under the Rehabilitation Act are "subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII. . . ." *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981).

custodian[,] where he trained numerous inpatient pharmacy technicians" from December 2014 to March 2015. (Am. Compl. [#14], ¶ 41.) Then in May 2015, he was reassigned to a position "man[ning] a kiosk desk," which was a position previously reserved for a volunteer. (Am. Compl. [#14], ¶¶ 23, 42.) In November 2014, Plaintiff applied but was not selected for a job vacancy. (Am. Compl. [#14], ¶ 33.)

Plaintiff describes that in September 2015, confusion ensued as to where Plaintiff would be placed. Plaintiff pleads that he was told that he "was to immediately begin training to move in the vault" and then—one day later—was informed he needed to be kept in his current position (at the kiosk) because "placing [him] in the vault would violate" the "limitations" prescribed to him. (Am. Compl. [#14], ¶¶ 49–52.) Plaintiff claims that he repeatedly followed up with Human Resources and other personnel regarding his placement at the kiosk. (Am. Compl. [#14], ¶¶ 54, 56.)

In November 2018, Plaintiff again applied but was not selected for a job vacancy.[5] (Am. Compl. [#14], ¶ 62.) The next month, Plaintiff claims a memorandum was issued that stated Plaintiff would be placed back in his original position as a pharmacy technician, "[d]espite [his] lacking clearance from the 'unfit for duty' determination." (Am. Compl. [#14], ¶¶ 64–65.) Plaintiff asserts he was informed in January 2019 that "the organization will honor the permanent restrictions received in 2014." (Am. Compl. [#14], ¶ 68.) In March 2019, it was allegedly confirmed by Human Resources that Plaintiff would remain "in the position he was currently in, with his current limitations." (Am. Compl. [#14], ¶ 71.) He then "resum[ed] work as a pharmacy technician at the Moreno Pharmacy" in "April or May 2019." (Am. Compl. [#14], ¶ 72.) He claims that "[d]espite facing overbearing supervisors and enduring a [hostile work environment]

_____

[5] This failure-to-promote incident was not included in Plaintiff's cause of action section. (Am. Compl. [#14], ¶ 171.)

characterized by ongoing discrimination and retaliation, he consistently perform[ed] exceptionally well and arguably [stood] as one of the most productive, dedicated, and reliable technicians within the BAMC Pharmacy department." (Am. Compl. [#14], ¶ 72.)

In May 2019, however, Plaintiff pleads that, once again, issues arose surrounding his unfit-for-duty determination and reasonable accommodations. (Am. Compl. [#14], ¶ 73–74.) He alleges that between May 2019 and August 2019, his "repeated inquiries regarding the status of a reasonable accommodation request made in 2014 were unanswered or disregarded." (Am. Compl. [#14], ¶ 77.) He also claims that his "appraisal," i.e., performance evaluation, was "modified" around this time. (Am. Compl. [#14], ¶ 75.) From August 2019 to July 2020, Plaintiff was repeatedly asked to provide updated medical records. (Am. Compl. [#14], ¶¶ 80, 89, 91, 97.) During that period, he received an "unsatisfactory performance rating without receiving adequate feedback, documentation, training, counseling, or a performance improvement plan." (Am. Compl. [#14], ¶ 90.)

Then in July 2020, Plaintiff was told that, although he had been found unfit for duty in 2014, "it appears he had been accommodated in [his] position by not performing all the position's essential functions," and that the Pharmacy "could move forward without updated medical records." (Am. Compl. [#14], ¶ 96.) That same month, Plaintiff was not selected for "an award under the Pharmacy's Technician Incentive Program." (Am. Compl. [#14], ¶ 99.)

Just one month later in August 2020, Plaintiff "received a memorandum stating that he could no longer be accommodated in his current position," and he was requested to "submit a resume for consideration for reassignment." (Am. Compl. [#14], ¶¶ 101–02.) Then on August 13, 2020, an internal medicine physician, Dr. Lisa Townsend, "issued a letter stating that Mr. Thackston did not require any work restrictions." (Am. Compl. [#14], ¶ 103.) Later that month,

Ms. Cheryl Soboleski issued a memorandum that "returned [Plaintiff] to full duties as a pharmacy technician with no restrictions." (Am. Compl. [#14], ¶ 106.)

In July 2021, Plaintiff applied but was not selected for a job vacancy announcement by hiring official Mr. Alfredo Paez. (Am. Compl. [#14], ¶ 109.)

Beginning in April 2022, Plaintiff states that he complained to multiple supervisors regarding the setup of a pharmacy workstation. (Am. Compl. [#14], ¶ 114.) He told them that it is "uncomfortable and causes unnecessary discomfort for [him]." (Am. Compl. [#14], ¶ 114.) He offered to ask if his doctor could assist him with receiving a reasonable accommodation for this issue. (Am. Compl. [#14], ¶ 114.) Plaintiff asserts that four days later, he was "downgraded" in his "performance appraisal . . . without providing proper justification." (Am. Compl. [#14], ¶ 115.)

Plaintiff later told a supervisor that he wished to "hold off on [his] request for a reasonable accommodation (RA) unless required as a last resort," claiming that he was previously "almost . . . removed from the department" due to an earlier reasonable accommodation request. (Am. Compl. [#14], ¶¶ 117, 119.) Plaintiff then "provided a request for an ergonomic survey"; other coworkers did so as well. (Am. Compl. [#14], ¶¶ 121–22.)

Around this time period, on May 19, 2022, Plaintiff again applied but was not selected for a job vacancy announcement by hiring official Mr. Alfredo Paez. (Am. Compl. [#14], ¶ 124.)

An ergonomic evaluation was completed in June 2022; it was allegedly recommended that the workstation setup be changed, but Plaintiff claims the recommendations were very slow to be implemented. (Am. Compl. [#14], ¶¶ 125–26, 144.) He complained again that the current setup frequently causes him pain, making it difficult for him to work there. (Am. Compl. [#14],

¶ 126.) At this time, he states that he also complained to management about the hostile work environment and "preferential treatment" of certain employees. (Am. Compl. [#14], ¶ 131.)

In July 2022, Plaintiff alleges that he was not selected for "the Pharmacy Technician Incentive Program Technician of the Quarter . . . despite having higher productivity than both the winner and the runner-up." (Am. Compl. [#14], ¶ 137.) On August 4, 2022, Plaintiff "participated in a pre-complaint mediation session" with management.[6] (Am. Compl. [#14], ¶ 140.) Soon after, on August 19, 2022, Plaintiff applied but was not selected for a job vacancy announcement by hiring official Mr. Alfredo Paez. (Am. Compl. [#14], ¶ 142.)

Beyond feeling discriminated and retaliated against, Plaintiff claims that throughout his employment, he has felt hostility from his coworkers and management and felt he was being treated differently. In October 2021, Plaintiff felt he was unfairly treated by Ms. Soboleski; he alleges that she "unfairly counseled" him for "working off the clock, despite having previously permitted herself and others to do so" and that she authorized overtime for certain employees but not him. (Am. Compl. [#14], ¶¶ 110, 138.) He was also denied a training opportunity at least three times, which he felt made him "disadvantaged in multiple job vacancies." (Am. Compl. [#14], ¶¶ 112–13, 123.) Moreover, in December 2022, he claims that his "appraisal was downgraded" for an incident despite being told there was "no penalty," and he asserts that "management[] consistently[ly] undermin[ed] . . . his performance." (Am. Compl. [#14], ¶¶ 147–48.) Plaintiff alleges that between June 2014 and November 2022, he "reported his concerns involving harassment, discrimination, and intolerable working conditions" to many individuals at Brook Army Medical Center. (Am. Compl. [#14], ¶ 161.)

---

[6] Plaintiff does not describe what the pre-complaint mediation session involved, but he states that "[n]one of the claims . . . review[ed] by the Administrative Judge were discussed during the session." (Am. Compl. [#14], ¶ 140.)

Plaintiff asserts that he is not the only employee at the Pharmacy who feels the workplace is a hostile work environment. He provides statements from five coworkers at the Pharmacy, who commented that the Pharmacy is "very stressful and sometimes hostile," that "favoritism is blatant," and that "the atmosphere . . . has deteriorated." (Am. Compl. [#14], ¶¶ 149–152, 155.) Two of these coworkers stated that they did not speak out about these problems due to fear of retaliation. (Am. Compl. [#14], ¶¶ 150, 155.) Plaintiff requested an "EO focus group" for the Pharmacy department multiple times. (Am. Compl. [#14], ¶¶ 111, 143, 160.) Plaintiff pleads that in February 2023, due to him raising concerns regarding a hostile work environment, he was "forcibly reassigned" from the Moreno Pharmacy to the Main Outpatient Pharmacy, where he continues to work. (Am. Compl. [#14], ¶¶ 72, 154.)

## IV.  <u>Analysis</u>

Plaintiff's First Amended Complaint[7] [#14] asserts three sets of claims under the Rehabilitation Act, including for (1) discrimination (disparate treatment) based on Defendant's failure to promote him in November 2014, July 2021, May 2022, and August 2022; (2) retaliation based on Defendant's failure to promote him on those four occasions and failing to select him for the Pharmacy Technician Incentive Program; and (3) a hostile work environment based on acts spanning from 2014 to 2023. (Am. Compl. [#14], ¶¶ 169, 171, 177, 179, 183, 188.) Defendant seeks to dismiss all of Plaintiff's claims. First, Defendant argues that many of Plaintiff's claims are time-barred. Second, Defendant argues that Plaintiff's Rehabilitation Act claims must fail because he has failed to allege a qualifying disability, failed to plausibly allege

---

[7] Defendant contends that Plaintiff "may not file an action based on the 2015 and 2019 EEO charges because it is untimely." (Mot. to Dismiss [#15], at 5.) But the undersigned only construes the Amended Complaint to be asserting claims that arise out of the 2022 EEO charge. Thus, the Court need not address the arguments for dismissal of the claims arising out of the 2015 and 2019 charges, which are not at issue in this lawsuit.

actionable harassment, and failed to plausibly state a causal link between his protected activity and any adverse employment actions.

The District Court should grant in part and deny in part Defendant's Motion to Dismiss First Amended Complaint. Specifically, Plaintiff's disability discrimination and retaliation claims based on Defendant's failure to promote him in November 2014 should be dismissed as time barred. Plaintiff's other discrimination claims (based on failures to promote him in July 2021, May 2022, and August 2022) should survive. His retaliation claims should be dismissed except for those based on his failure to be promoted in July 2021, May 2022, and August 2022 for making internal complaints. And finally, his hostile work environment claim should be dismissed for failure to state a claim.

## A.     Whether Failure-to-Promote Claims Are Time Barred

As noted above, the Amended Complaint asserts disability discrimination and retaliation claims based on Plaintiff's failure to be promoted four times, in November 2014, July 2021, May 2022, and August 2022. (Am. Compl. [#14], ¶ 171.) The discrimination and retaliation claims based on Defendant's failure to promote him in November 2014 are time barred. His discrimination and retaliation claims based on the failure to promote him in July 2021 is not. Defendant does not dispute that the discrimination and retaliation claims based on his failures to be promoted twice in 2022 are timely.

Plaintiff received a final action and right-to-sue notice concerning his September 2022 charge from the Department of the Army on December 20, 2023, and subsequently timely filed this lawsuit within ninety days, on March 18, 2024.[8] (Am. Compl. [#14], ¶¶ 10–11.) Thus, his lawsuit is timely with regard to the claims exhausted in his 2022 charge. Defendant represents to

---

[8] As noted above, the undersigned has construed the allegation that the charge is from February 2019 as a typo. *See supra* note 3.

11

the Court that Plaintiff also filed EEO charges in 2015 and 2019, and argues that any claim in this lawsuit that arises out of incidents addressed in the 2015 and 2019 EEO charges are time-barred

Federal employees bringing employment discrimination claims must have first exhausted their administrative remedies, which includes the employee consulting with an EEO counselor within 45 days of the alleged discriminatory action. *Green v. Brennan*, 578 U.S. 547, 553 (2016); 29 C.F.R. § 1614.105(a)(1). Subsequently, once the employee has received notice of the agency's final action or the EEOC's final decision, they have 90 days to file a civil action. 29 C.F.R. § 1614.407(a), (c).[9]

As noted above, Plaintiff's Amended Complaint asserts four disability discrimination and retaliation claims based on Defendant's failure to promote him. The November 2014 non-selection, however, was already addressed in a previous charge. Not only did Plaintiff previously raise this 2014 non-selection in his 2015 EEO charge, the EEOC rendered its decision in December 2020, and Plaintiff failed to timely appeal that decision to the Court. The EEOC decision on his 2015 charge, which is a public record, affirms the Army's decision that Plaintiff failed to show that his non-selection in November 2014 was based on discriminatory motives. *Lemuel D., Complainant*, EEOC DOC 2019005217, 2020 WL 8018589, at *4 (E.E.O.C. Dec. 17, 2020). Because this claim should have been appealed within 90 days after the EEOC decision—

---

[9] Defendant incorrectly states in his Motion to Dismiss that Plaintiff was also required to file his charges with the EEOC within 180 days after the alleged discriminatory act, citing a case involving a private-sector employee, which itself cites § 2000e-5(e)(1). (Mot. to Dismiss [#15], at 6.) Because Plaintiff is a federal employee, however, the 180-day deadline in § 2000e-5(e)(1) does not apply. *See* 29 C.F.R. § 1614.105(a)(1); 29 C.F.R. § 1614.407; 42 U.S.C. § 2000e-16(d) (mandating that only § 2000e-5(f)–(k) apply to civil actions brought by federal employees, thus excluding § 2000e-5(e)).

years ago—the Court should dismiss his discrimination and retaliation claims based on the 2014 non-selection.

Defendant argues that his discrimination and retaliation claims based on his non-selections in November 2018 and July 2021 are time barred, too. First, the cause-of-action section of Plaintiff's Amended Complaint does not assert a disability discrimination claim based on the alleged failure to promote in November 2018. *See* Am. Compl. [#14], at ¶ 171 (specifying only four incidents where Plaintiff was not promoted as the basis of the cause of action).

Second, Defendant points out that Plaintiff failed to timely initiate EEO counseling related to his July 2021 non-selection claim. The documents relied upon by Defendant to make this assertion, however, may not be considered by the Court at this time.[10] Neither of these documents are attached to or referenced in Plaintiff's Amended Complaint, and they are not public records. Thus, the Court may not properly consider these documents at the pleadings stage. *See Lopez*, 2023 WL 2423473, at *1–2 (reversing the district court for "premature[ly]" granting "dismissal on the pleadings" where the district court, relying upon a date in an EEO counselor's report not attached to or referenced by the complaint, dismissed the case based on an administrative exhaustion defense). Whether Plaintiff timely initiated counseling within 45 days of his 2021 non-selections does not appear on the face of the Amended Complaint, so the Court should not dismiss his discrimination or retaliation claims on this basis. This is a summary judgment issue.

---

[10] Defendant cites to a Corrected Notice of Partial Acceptance [#15-3] and a Memorandum allowing Plaintiff to amend his complaint [#15-4], which are attached to the Motion to Dismiss.

**B.**    **Plaintiff's Disability Discrimination Claims Are Adequately Pleaded.**

Defendant also argues that Plaintiff has failed to plead a disability discrimination claim under the Rehabilitation Act. For a claim of disability discrimination to survive a motion to dismiss, a plaintiff must plausibly allege that "(1) he is an 'individual with a disability;' (2) who is 'otherwise qualified' for the position sought; (3) who worked for a 'program or activity receiving Federal financial assistance;' and (4) that he was discriminated against 'solely by reason of her or his disability.'" *Carter v. Ridge*, 255 F. App'x 826, 829 (5th Cir. 2007) (per curiam) (quoting *Hileman v. City of Dall., Tex.*, 115 F.3d 352, 353 (5th Cir. 1997); 29 U.S.C. § 794(a)). Courts look to Americans with Disabilities Act ("ADA") cases in determining whether a plaintiff has pleaded an adequate disability discrimination claim under the Rehabilitation Act, although the Rehabilitation Act additionally requires that Plaintiff plead that the disability was the sole reason for the discrimination. *Wilson v. City of Southlake*, 936 F.3d 326, 330 (5th Cir. 2019); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454–55 (5th Cir. 2005).

    **i.**    **Viewing the facts in the light most favorable to Plaintiff, he has plausibly alleged that he is an individual with a disability.**

Defendant argues that Plaintiff has not plausibly alleged he has a qualifying disability. The ADA, and therefore the Rehabilitation Act, defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1). Congress ordered in the Americans with Disabilities Act Amendments Act of 2008 that the "definition of disability . . . shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." *Id.* § 12102(4)(A). In determining whether a limitation is substantial, the Fifth Circuit looks to whether the person's impairment "substantially limits his ability to perform a major life activity as compared to most

14

people in the population." *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 479 (5th Cir. 2023) (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 591 (5th Cir. 2016) (internal quotations omitted)). Courts are to interpret the term "substantially limits" less strictly now than before the amendments to the ADA, and this "threshold issue . . . should not demand extensive analysis."[11] *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(iv)); 29 C.F.R. § 1630.2(j)(1)(iii).

At the motion-to-dismiss stage, a plaintiff's complaint need only contain sufficient factual allegations that, accepted as true, make a claim to relief plausible. *Chhim*, 836 F.3d at 469. Here, Plaintiff has alleged that he has multiple medical conditions—neuropathy, migraines, plantar fasciitis, and degenerative back issues—that substantially limited his ability to do major life tasks, including "performing manual tasks, sleeping, walking, standing, lifting, [and] bending."[12] (Am. Compl. [#14], ¶ 166.) In 2013, he provided his employer with a "memo" from a physician that stated "he has a medical condition that limits his use of his knees, and that he would require limited weight-bearing activities with frequent rest periods for prolonged standing/sitting." (Am. Compl. [#14], ¶ 14.) In 2014, a memo from an occupational health specialist gave Plaintiff the following limitations: "no bending, stooping, squatting, and to limit standing/walking to 30-60 minutes at a time." (Am. Compl. [#14], ¶ 19.) He alleges that these conditions "impair [him] to this day." (Am. Compl. [#14], ¶ 16.)

---

[11] Defendant argues that Plaintiff does not suffer from a substantial limitation by comparing his alleged restrictions to cases from *before* the amendments to the ADA. (Mot. to Dismiss [#15], at 12.) The undersigned cautions that these cases are "neither binding nor persuasive for determining whether [there is] evidence that a plaintiff is substantially limited . . . under the amended ADA." *Cruz v. R2Sonic, LLC*, 405 F. Supp. 3d 676, 687–88 (W.D. Tex. 2019).

[12] Defendant states in his Reply that Plaintiff only made these allegations in his Response [#19] and that the Court should therefore not consider these allegations. (Def. Reply [#22], at 3.) Yet the very paragraph Defendant cites to does indeed allege these restrictions.

Defendant argues that Plaintiff has no "limitations" because he received a doctor's note in August 2020 clearing him to work as a pharmacy technician with no restrictions. (Mot. to Dismiss [#15], at 11; Am. Compl. [#14], ¶ 103.) Yet, a condition need not "interfere with an individual's job in order to qualify as a disability." *Mueck*, 75 F.4th at 482 n.8 (citing *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 591 n.3 (5th Cir. 2016)); *see also E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 619 (5th Cir. 2009) ("Considering plaintiffs' abilities to perform their jobs as evidence weighing against finding that they are disabled under the ADA would create an impossible catch–22 for plaintiffs.") It is plausible that Plaintiff's multiple medical conditions cause substantial limitations that are not implicated by his job duties as a pharmacy technician, such as him needing to "limit[] weight-bearing activities" or significantly impairing his sleep. (Am. Compl. [#14], ¶¶ 14, 166.) Thus, at the pleading stage, Plaintiff's allegations that he is disabled are sufficient.

### ii.    Plaintiff has adequately alleged the other elements of a disability-discrimination claim.

Plaintiff has plausibly alleged the other three elements of his disability-discrimination claims—that he was a "qualified individual" for the sought-after positions, that he worked for a "program or activity receiving Federal financial assistance," and that he was discriminated against solely due to his disability. *Carter*, 255 F. App'x at 829 (quoting *Hileman*, 115 F.3d at 353).

First, Plaintiff has sufficiently pleaded that he was qualified for "promotions and pay increases." (Am. Compl. [#14], ¶ 7.) He alleged that he was "more qualified than similarly situated technicians in the GS-6 position," which is his current position. (Am. Compl. [#14], ¶ 7.) He claims that he is "one of the most productive, dedicated, and reliable technicians" within his pharmacy department. (Am. Compl. [#14], ¶ 72.) He has experience "train[ing] numerous

inpatient pharmacy technicians." (Am. Compl. [#14], ¶ 41.) He asserts that "he was denied multiple promotions while similarly situated non-disabled employees were promoted," even though "he was more qualified." (Am. Compl. [#14], ¶ 169.)

Second, Plaintiff meets the Federal financial assistance element as an employee at Brooke Army Medical Center Pharmacy. (Am. Compl. [#14], ¶ 12.)

Third, and lastly, Plaintiff has pleaded sufficient facts at the motion-to-dismiss stage to plausibly allege that the three failure-to-promote incidents in 2021 and 2022 were solely caused by his disability.[13] Plaintiff has alleged that despite being qualified (in fact, more qualified than others at his level), he has yet to be promoted, while others who he alleges were non-disabled and less qualified were chosen for the GS-07/08 positions to which he applied. (Am. Compl. [#14], ¶¶ 170–171.) He alleges the discrimination was "solely by reason of his disability." (Am. Compl. [#14], ¶ 169.) While these allegations could be more detailed, they are sufficient at the motion-to-dismiss stage to put Defendant on fair notice of what claim Plaintiff is making and of the basis for his claim. *See Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S., 41, 47 (1957)) (explaining that to survive a motion to dismiss, a complaint "does not need detailed factual allegations" but does need to give "fair notice" to the defendant). Thus, the Court should deny the motion to dismiss Plaintiff's disability discrimination claims.

---

[13] Defendant argues that by asserting both disability discrimination and retaliation claims, Plaintiff has forfeited his disability discrimination claim (i.e., because he has alleged that there could have been another reason for the adverse employment actions, rather than disability discrimination being the sole reason). (Mot. to Dismiss [#15], at 14–15.) While Plaintiff may at some point have to pick a lane, at the pleadings stage, plaintiffs are permitted to make alternative pleadings. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 223 (5th Cir. 2018) (per curiam) (explaining in a Rehabilitation Act case that the "possibly of additional, or alternative, reasons for the college's decision [did] not detract from the plausibility of [plaintiff's] allegation that his disability was the 'sole reason'" for the adverse action against him).

C.    **Plaintiff's Retaliation Claims Are Adequately Pleaded.**

Defendant also argues that Plaintiff has failed to adequately plead his retaliation claims. Again, Plaintiff alleges Defendant's failures to promote him and failures to select him for the Pharmacy Technical Incentive Program were illegal retaliation for engaging in protected activity. (Am. Compl. [#14], ¶ 179.)

When evaluating the sufficiency of pleadings with retaliation claims under the Rehabilitation Act, the Fifth Circuit applies the same framework as in Americans with Disability Act and Title VII cases. *Calderon v. Potter*, 113 F. App'x 586, 592 n.1 (5th Cir. 2004) (per curiam) (citing *Shannon v. Henderson*, 275 F.3d 42, 2001 WL 1223633, at *8 (5th Cir. 2001) (per curiam)). Thus, to plead a claim of retaliation under the Rehabilitation Act, a plaintiff must allege facts that show: "(1) he engaged in a protected activity (e.g., the filing of an EEO complaint); (2) his employer took an adverse employment action against him; and (3) a causal connection existed between the adverse employment action and the protected activity." *Id.* at 592 (citing *Shannon*, 2001 WL 1223633, at *8–9; *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001)).

First, Plaintiff has alleged that he engaged in two types of protected activity: (1) filing EEO charges and (2) making internal complaints relating to disability discrimination. (Am. Compl. [#14], at ¶¶ 7, 10, 161, 176.) Filing EEO charges is a protected activity. *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 584 U.S. 53 (2006) (citing *Dollis v. Ruben*, 77 F.3d 777, 781 (5th Cir. 1995)). Internal complaints are also a protected activity when the complaints are related to allegedly illegal discrimination. *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 224–25 (5th Cir. 2023). Plaintiff alleges that he "reported his concerns involving harassment,

18

*discrimination*, and intolerable working conditions" to a large number of individuals at his workplace. (Am. Compl. [#14], ¶ 161 (emphasis added).)

Defendant argues that the only protected activity that can serve as the basis for a retaliation claim in this case is protected activity that Plaintiff explicitly addresses in his 2022 EEO charge, as only a claim based on that protected activity would be properly exhausted. In his 2022 EEO charge, Plaintiff explicitly states he experienced retaliation due to filing his 2019 EEO charge. (Army Final Action [#15-2], at 1–2.) Thus, Defendant argues, Plaintiff cannot use any other allegedly protected activities—such as internal complaints—as the basis for his retaliation claim in this suit. (Mot. to Dismiss [#15], at 18.) This is incorrect. It is well established that "the scope of an EEOC complaint should be construed liberally" when "determining whether a plaintiff has exhausted a particular claim." *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (quoting *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017)).[14] Courts are to "look slightly beyond [the administrative charge's] four corners" and view the scope of the charge "by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *Patton*, 874 F.3d at 443).

The Defendant relies on *Chhim* for the assertion that Plaintiff failed to exhaust retaliation claims based on other informal grievances he made at work because he only explicitly stated that retaliation was due to the 2019 EEO charge in his 2022 charge. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 472 (5th Cir. 2016). In *Chhim*, however, the plaintiff had only included in his EEO charge that he had made a complaint of discrimination with the University *after* he was not chosen for a job; his judicial complaint included unexhausted allegations that he had also made

---

[14] *Jennings* involved Title VII and ADA claims. As explained above, Rehabilitation Act claims are "subject to the same procedural constraints (administrative exhaustion, etc.) set forth in Title VII. . . ." *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981).

complaints to the University *before* he was not chosen for the job. *Id.* The Fifth Circuit held that the scope of the investigation into his post-hiring-decision complaints could not reasonably be expected to reach his pre-hiring-decision complaints. *Id.*

In this case, on the other hand, Plaintiff has alleged that he made both EEO complaints and internal complaints related to discrimination, and they were the reason he was not promoted in May or August of 2022. (Am. Compl. [#14], ¶¶ 177–79.) It is likely that an EEO investigation into alleged retaliation against him for filing the 2019 EEO charge would have uncovered his internal complaints of disability discrimination, as well. *See Jennings*, 11 F.4th at 342 (5th Cir. 2021) (quoting *Patton*, 874 F.3d at 443); *Taylor v. Univ. of Miss. Med. Ctr.*, No. 23-60246, 2024 WL 512559, at *1 n.1 (5th Cir. Feb. 9, 2024) (per curiam) (noting that a plaintiff exhausted his administrative remedies for a retaliation claim even when he failed to check the "retaliation" box on his EEOC charge). Thus, Plaintiff has plausibly alleged that he exhausted his retaliation claims and that he engaged in protected activities by both filing an EEO charge in 2019 and making internal complaints regarding disability discrimination.[15]

In addition to alleging that he was retaliated against by Defendant by failing to promote him, the Amended Complaint also alleges that, due to his protected activity, Plaintiff did not receive an award under the Pharmacy's Technician Incentive Program. (Am. Compl. [#14], ¶¶ 99, 137, 179.) An adverse employment action includes discrimination related to "hiring, granting leave, discharging, promoting, or compensating," as well as discrimination related to the "terms, conditions, or privileges" of the plaintiff's employment. *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 498, 501–02 (5th Cir. 2023) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 77

---

[15] Moreover, an affirmative defense like failure to exhaust must "appear on the face of the complaint," yet the Court has not been provided with Plaintiff's EEO charges. *See EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 470 (5th Cir. 2006). Without such evidence, it would be inappropriate to dismiss on exhaustion grounds at this stage.

(1984)). The plaintiff "need show only some injury," rather than significant injury. *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 359 (2024). The standard for adverse employment actions is the same under Title VII, the Americans with Disability Act, and the Rehabilitation Act. *McKay v. Johanns*, 265 F. App'x 267, 269 (5th Cir. 2008) (per curiam).

A failure to promote is clearly established as an adverse employment action. *Hamilton*, 79 F.4th at 499–500. Whether Plaintiff not being given an award under the Pharmacy's Technician Incentive Program may qualify as discrimination in the "terms, conditions, or privileges" of his employment is less clear, as it would depend on the circumstances (i.e., whether it involves a monetary bonus or merely praise). Here, however, Plaintiff failed to allege *any* facts as to what the award entails and has therefore not pleaded sufficient facts that would establish it qualifies as an action affecting a term, condition, or privilege of employment. Thus, the undersigned will only consider the failures to promote as the relevant adverse employment actions.

To satisfy the last element of a retaliation claim at the motion-to-dismiss stage, the plaintiff must "plead facts permitting a reasonable inference that [the employer] terminated [him] because of" the protected activity. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). This causal link can be demonstrated by evidence "that the employer's decision to terminate was based in part on knowledge of the employee's protected activity," or "simply by showing close enough timing between the two events." *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) (quoting *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019), and then quoting *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019)). Even when a plaintiff has demonstrated his employer's awareness of the protected activity, however, the temporal proximity between the protected activity and the adverse employment action may be

"too remote to permit a reasonable inference of causation." *Wright*, 990 F.3d at 433–34 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).

Plaintiff's February 2015 and June 2019 EEO charges are far too remote from the failures to promote Plaintiff in July 2021, May 2022, and August 2022.[16] In *Wright*, the Fifth Circuit held that a "two-year lapse is indeed too remote to permit a reasonable inference of causation. *Id.* The gaps between each of Plaintiff's EEO charges and the failure-to-promote incidents are longer than two years. He makes no other specific allegations to show a causal link between these alleged protective activities and the alleged adverse actions. *See Norsworthy v. Hou. Indep. Sch. Dist.*, 70 F.4th 332, 337 (5th Cir. 2023). Thus, Plaintiff has not sufficiently alleged that his 2015 or 2019 EEO charges caused the adverse employment actions.

Some of Plaintiff's internal complaints, however, are much closer in time to the failure-to-promote incidents and do satisfy the causality requirement. For instance, Plaintiff alleges that on April 29, 2022, he told a supervisor that he felt "a previous [reasonable accommodation] request almost resulted in [his] being removed from the department." (Am. Compl. [#14], ¶ 119.) He was notified that he was not selected for a promotion less than one month later. (Am. Compl. [#14], ¶ 124.) Additionally, Plaintiff pleads that he "participated in a pre-complaint mediation session" with the BAMC attorney, Ms. Safiya Porter, and the Director of Clinical Support, COL Steven Richter, on August 4, 2022. (Am. Compl. [#14], ¶ 140.) He then learned on August 19, 2022—only fifteen days later—that he again had not received a promotion to which he had applied. (Am. Compl. [#14], ¶ 142.)

---

[16] His third EEO charge, made in September 2022, cannot itself have caused the failures to promote, as it was filed after those alleged events.

Defendant argues that Plaintiff cannot show a causal link because he did not allege facts to suggest that the relevant hiring official knew of his protected activities.[17] (Mot. to Dismiss [#15], at 17.) Yet, viewing the above-pleaded facts in the light most favorable to the Plaintiff—such as the proximity in time between complaints and denials of promotions and the *long* list of complaints Plaintiff made to *many* colleagues—allows the Court to plausibly infer that his internal complaints about disability discrimination were well known throughout his workplace and caused the failure-to-promote incidents. Moreover, Plaintiff specifically alleges that the decisionmakers were aware of his complaints. (Am. Compl. [#14], ¶ 178.)

In conclusion, the District Court should grant the motion to dismiss Plaintiff's retaliation claims based on his protected activity of filing EEO charges. However, Plaintiff has pleaded plausible retaliation claims based on his internal complaints and the failures to promote in July 2021, May 2022, and August 2022, and the District Court should deny the motion to dismiss the retaliation claims based on these incidents.

## C.    Plaintiff's Hostile Work Environment Claim Is Not Adequately Pleaded.

Defendant contends that Plaintiff has not adequately pleaded a hostile work environment claim based on disability.[18] Plaintiff asserts that he suffered from severe or pervasive harassment due to his disability, which amounted to a hostile work environment.[19] The Fifth Circuit has

---

[17] Defendant also contends that "the Complaint does not even allege who were [the] hiring officials. . . for each position." (Mot. to Dismiss [#15], at 17.) In fact, the Amended Complaint **explicitly** alleges who the hiring official was for the May 2022 and August 2022 failure-to-promote incidents—Mr. Alfredo Paez. (Am. Compl. [#14], ¶¶ 124, 142.)

[18] Defendant also argues this claim is time barred. The Court need not reach that issue because the claim should be dismissed for failure to state a claim.

[19] The terms "hostile work environment" and "disability-based harassment" are used interchangeably in case law as they are the "same . . . cause of action." *Equal Emp. Opportunity*

"read the Rehabilitation Act together with the ADA in allowing a harassment claim under the Rehabilitation Act." *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 180 (5th Cir. 2011) (citing *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 506–07 (5th Cir. 2002)).

To survive a motion to dismiss a hostile work environment claim, Plaintiff must plausibly allege facts to establish: "(1) he is a member of a protected group; (2) he was subjected to harassment; (3) that the complained of harassment was based solely on his disability; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Travis v. Potter*, 221 F. App'x 345, 348 (5th Cir. 2007) (per curiam) (citing *Soledad*, 304 F.3d at 506 & n.8). Further, the disability-based harassment "must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470–71 (5th Cir. 2021) (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 236 (5th Cir. 2001)). "In determining whether harassment is sufficiently pervasive or severe, [courts] consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 471 (quoting *Patton*, 874 F.3d at 445).

Plaintiff has not alleged sufficient facts that, taken as true, support an inference that he suffered from pervasive or severe harassment solely due to his disability. He points to "overbearing supervisors," "preferential treatment," and "undermining of his performance." (Am. Compl. [#14], ¶¶ 72, 131, 148.) He also claims his denied promotions are evidence of the hostile work environment. (Am. Compl. [#14], ¶ 183.)

---

*Comm'n v. U.S. Drug Mart, Inc.*, No. 23-50075, 2024 WL 64766, at *1 n.1 (5th Cir. Jan. 5, 2024).

Yet this alleged hostility does not appear to be severe or pervasive, nor does it appear to be unique to Plaintiff or to other disabled employees. Plaintiff alleges that "repeated questioning" about his disability "contributed to a continuous hostile work environment" and that "management[] . . . falsely alleg[ed] that he was inflating his ticket numbers." (Am. Compl. [#14], ¶ 186.) These instances are neither severe nor pervasive enough to meet the Fifth Circuit's "fairly high standard." *See Flowers*, 247 F.3d at 236. Moreover, denials of promotions, though "adverse employment actions . . . are not offensive or harassing in the way necessary to support a hostile work environment claim." *Montgomery-Smith v. George*, 810 F. App'x 252, 259 (5th Cir. 2020) (per curiam).

Additionally, Plaintiff provides several statements from other employees of the Moreno Pharmacy, who reportedly stated that the work environment is "often very stressful and sometimes hostile," "favoritism is blatant," and "the atmosphere . . . has deteriorated." (Am. Compl. [#14], ¶¶ 149, 152. 155.) Plaintiff does not allege that these coworkers were disabled. It therefore appears that, even if the Pharmacy does have a "hostile work environment" in the colloquial sense, it is one common to all employees and not solely based on disability.

The undersigned also notes that, though the Amended Complaint asserts that the hostile work environment claim is based on disability multiple times (Am. Compl. [#14], ¶¶ 8, 183), Plaintiff's Amended Complaint suggests he is attempting to assert a retaliatory hostile work environment claim. (Am. Compl. [#14], ¶ 187.) To the extent Plaintiff is making such a claim, and to the extent such a claim exists,[20] the facts alleged again do not establish severe and

---

[20] In Paragraph 187 of the Amended Complaint, Plaintiff claims: "The Fifth Circuit has recognized retaliatory hostile work environment claims. *Montgomery-Smith v. George*, 810 F. App'x 252, 258 (5th Cir. 2020) (per curiam)." In fact, that very case—and page—Plaintiff cites instead states: "This circuit has not recognized a retaliatory hostile work environment cause of

pervasive enough harassment to rise to the level of a hostile work environment, for the same reasons explained above. The District Court should therefore grant Defendant's motion to dismiss Plaintiff's claims of a hostile work environment on the bases of disability-based harassment and retaliatory harassment.

## V.    Conclusion and Recommendation

Having considered Defendants' motion, the response and reply thereto, the pleadings, and the governing law, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss First Amended Complaint [#15] be **GRANTED IN PART AND DENIED IN PART**, and specifically, that:

- Plaintiff's disability discrimination claims under the Rehabilitation Act based on Defendant's failure to promote him in July 2021, May 2022, and August 2022 should **survive**; his other discrimination claims should be **DISMISSED**.

- Plaintiff's Rehabilitation Act retaliation claims based on his internal complaints and Defendant's failure to promote him in July 2021, May 2022, and August 2022 should **survive**, but his other retaliation claims should be **DISMISSED**.

- Plaintiff's hostile work environment claim should be **DISMISSED**.

## VI.    Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing

---

action, though twelve circuits have. **We need not decide today whether to recognize such a claim** . . . ." *Montgomery-Smith*, 810 F. App'x at 258 (emphasis added).

objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 11th day of March, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE