IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT THACKSTON, | § | |
| | § | |
| *Plaintiff,* | § | SA-24-CV-00276-FB-ESC |
| | § | |
| vs. | § | |
| | § | |
| DANIEL P. DRISCOLL, SECRETARY OF THE ARMY; | § | |
| | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant Secretary Daniel P. Driscoll's Response to Plaintiff's Injunctive Relief Statement and Renewed Motion for Judgment on the Pleadings [#41]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#18]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the motion [#41] be **GRANTED**. The undersigned also notifies the District Court that Rule 11(c) sanctions may be appropriate in this matter.

**I. Background**

Plaintiff Robert Thackston has worked in the Brooke Army Medical Center Pharmacy ("BAMC") since April 2011. (Am. Compl. [#14], ¶ 12.) He filed this suit against the Secretary of the Army, d/b/a BAMC, alleging discrimination, retaliation, and a hostile work environment under the Rehabilitation Act. (Am. Compl. [#14], ¶ 5.) The Secretary previously filed a motion to dismiss [#15], which the undersigned recommended be granted in part and denied in part [#27]. The Court

1

adopted the Report and Recommendation on March 27, 2025 [#30]. As such, Plaintiff's disability discrimination claims under the Rehabilitation Act based on failure-to-promote incidents in July 2021, May 2022, and August 2022 survived the motion to dismiss; his other discrimination claims were dismissed. (Order Adopting Report and Recommendation [#30], at 2.) Similarly, his Rehabilitation Act retaliation claims based on internal complaints and failure-to-promote incidents in July 2021, May 2022, and August 2022 survived the motion to dismiss, but his other retaliation claims were dismissed. (Order Adopting Report and Recommendation [#30], at 2.) Plaintiff's hostile work environment claim was dismissed. (Order Adopting Report and Recommendation [#30], at 2.)

The Secretary subsequently filed a Motion for Judgment on the Pleadings [#31] claiming that Plaintiff lacks standing and that, as such, this Court lacks jurisdiction. The undersigned recommended that the motion be granted as to Plaintiff's claim for damages [#39]. The undersigned also recommended denying the motion as to Plaintiff's claim for injunctive relief but ordered Plaintiff to file a More Definite Statement clarifying the injunctive relief he is seeking and how such relief would not violate federal statutes or regulations. (Report and Rec. [#39], at 5.) ] The District Court adopted the undersigned's Report and Recommendation as to the Motion for Judgment on the Pleadings [#42]. Plaintiff filed his Injunctive Relief Statement [#40], the Secretary filed a Response and Renewed Motion for Judgment on the Pleadings [#41], Plaintiff replied in support of his Injunctive Relief Statement and responded to the renewed motion [#43], and the Secretary filed a reply [#44]. The motion is therefore ripe for the Court's review.

## II.    Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.

R. Civ. P. 12(c). The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Furthermore, a court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, a court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *Twombly*, 550 U.S. at 570.

### III. Notification to the District Court of a Potential Violation of Rule 11(b)

The undersigned notifies the District Court that Plaintiff's Reply In Support Of Plaintiff's Injunctive Relief Statement And Opposition To Defendant's Renewed Motion For Judgment On The Pleading [#43] is rife with citations to cases that do not exist and mischaracterizations of other cases. More specifically, two citations are to cases that do not exist. And although many of the other cases he cites are real cases, he materially misrepresents the propositions these cases stand for, often

providing "hallucinated" quotes. It therefore appears that Plaintiff's counsel likely used generative artificial intelligence ("GenAI") to assist in his research and, even more strikingly, did not bother to check whether the GenAI-generated content was accurate.

For instance, in support of his argument that it is permissible for the Court to order the Army to promote him, Plaintiff includes a material misstatement of the law. He writes:

> The Fifth Circuit, which includes the Western District of Texas, has recognized that a restorative assignment can be an appropriate remedy for discrimination. In the case of *Palmer v. Shultz*, 815 F.2d 84 (D.C. Cir. 1987), the court held that a restorative assignment was an appropriate remedy for a violation of the Rehabilitation Act. The court stated, "The Rehabilitation Act authorizes 'affirmative action' in favor of handicapped individuals, and we see no reason why such action may not include an order requiring the agency to give the plaintiff a job for which he is qualified and which he was denied because of his handicap."

(Pl. Reply [#43], ¶ 20.) There are multiple problems with this paragraph. First, of course, a D.C. Circuit case does not support Plaintiff's assertion that the *Fifth Circuit* has recognized such a remedy. Second, though *Palmer* is a real case, it is a Title VII case about sex discrimination—not a Rehabilitation Act case. *Palmer*, 815 F.2d at 89. In fact, the Palmer court never even mentions the Rehabilitation Act. **Third, the quote attributed by Plaintiff to *Palmer* is not in *Palmer*, <u>nor is it from *any case by any court* found in the undersigned's search of multiple legal databases</u>**.[1]

The above quotation is not the only hallucinated quote or legal contention in the Reply brief. There are several:

- "In *EEOC v. WC&M Enterprises, Inc.*, 496 F.3d 393 (5th Cir. 2007), the court held that an employer's failure to provide training can constitute an adverse employment action under Title VII. The court noted that 'an employer's decision to deny training can be an adverse employment action if it affects an employee's compensation, terms, conditions, or privileges of employment.' Id. at 401." (Pl. Reply [#43], ¶ 14.)
    - The *WC&M Enterprises* case is not about adverse employment actions. It does not contain the quote cited by Plaintiff, and neither does <u>any other</u> federal case.

---

[1] The Secretary represents in his Reply [#44] that he also could not identify where this quote came from.

- "The Fifth Circuit has consistently held that 'an employer's refusal to make reasonable accommodations for a disabled employee constitutes discrimination under the ADA.' See Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 481 (5th Cir. 2016)." (Pl. Reply [#43], ¶ 16.)

    - Although this is a correct statement of law under the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A), and the *Delaval* case does involve a failure-to-accommodate claim, this quote does not appear in the cited case.

- "The court has also recognized that retaliation claims under the ADA are cognizable when an employer takes adverse employment actions in response to an employee's request for reasonable accommodations. See E.E.O.C. v. LHC Group Inc., 773 F.3d 688, 697 (5th Cir. 2014)." (Pl. Reply [#43], ¶ 16.)

    - The *LHC Group* case is not about a retaliation claim.

- "Moreover, the Fifth Circuit, which includes the Western District of Texas, has recognized that anti-retaliation protections are essential to ensure that employees can assert their rights without fear of reprisal. In Fabela v. Socorro Independent School District, the court held that an employer's failure to implement an effective anti-retaliation policy could be evidence of a hostile work environment (329 F.3d 409 (5th Cir. 2003))." (Pl. Reply [#43], ¶ 25.)

    - The *Fabela* case did not involve a hostile work environment claim and does not discuss anti-retaliation policies.

- "In the case of EEOC v. AutoZone, Inc., No. 14-1687 (7th Cir. 2015), the court approved a consent decree that included the appointment of a third-party monitor to ensure compliance with the decree's provisions." (Pl. Reply [#43], ¶ 27.)

    - 7th Circuit case no. 14-1687 is an entirely different case; that case number refers to *Miller v. Greenleaf Orthopedic Assocs., S.C.* Although there are Seventh Circuit opinions where the parties are the EEOC and AutoZone, Inc., these opinions do not discuss the appointment of a third-party monitor related to a consent decree.[2]

- "The Defendant's argument that the requested relief improperly asks the Court to usurp the responsibilities of the Executive Branch is flawed. The Court's role in enforcing

---

[2] *See E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824 (7th Cir. 2013) (not pertaining to a consent decree or a third-party monitor); *E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635 (7th Cir. 2010) (same); *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916 (7th Cir. 2016) (same); *U.S. Equal Empl. Opportunity Comm'n v. AutoZone, Inc.*, 860 F.3d 564 (7th Cir. 2017) (same); *U.S. Equal Empl. Opportunity Comm'n v. AutoZone, Inc.*, 875 F.3d 860 (7th Cir. 2017) (same).

5

antidiscrimination laws is well-established. In fact, the Supreme Court has held that 'the courts have been given a role in the enforcement of federal anti-discrimination laws, and it is not a minor one.' (Alexander v. Gardner-Denver Co., 415 U.S. 36, 56 (1974))." (Pl. Reply [#43], ¶ 30.)

- o The *Alexander* case does not contain this quote, and neither does <u>any other</u> federal case (let alone a Supreme Court case).

- "In its Compliance Manual, the EEOC states that 'courts have broad equitable powers to fashion remedies that will ensure compliance with the Act.' (EEOC Compliance Manual, Section 3: Remedies)." (Pl. Reply [#43], ¶ 32.)

  - o This quote does not appear to exist in any EEOC document. Moreover, Section 3 of EEOC Compliance Manual is about "Employee Benefits,"[3] not "remedies" as represented by Plaintiff.

- "In the case of Armstrong v. Turner Industries, Group, LLC, 141 F.3d 554, 562 (5th Cir. 1998),[4] the Fifth Circuit held that a court may order remedies to ensure compliance with the Rehabilitation Act. The court stated, 'The Rehabilitation Act is a broad mandate to eliminate discrimination against individuals with disabilities . . . We have held that courts have wide discretion to fashion remedies that ensure compliance with the Act.'" (Pl. Reply [#43], ¶ 33.)

  - o This *Armstrong* case is not about the Rehabilitation Act. The above quote does not appear in this case or <u>any other</u> federal case.

- "The Defendant's argument also fails to recognize the role of the court in interpreting and applying federal regulations. In Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984), the Supreme Court held that courts must defer to an agency's interpretation of a statute it administers unless the interpretation is unreasonable." (Pl. Reply [#43], ¶ 34.)
  - o Setting aside that this is a misstatement of *Chevron*'s holding, *Chevron* has been explicitly overruled. *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 412 (2024) ("*Chevron* is overruled.").

- "The Court has the authority to order remedies that ensure compliance with federal anti-discrimination law. This authority is well established in case law. For example, in United States v. City of Los Angeles, 595 F.3d 1006 (9th Cir. 2010), the Ninth Circuit held that the district court had the authority to order the City of Los Angeles to comply with the

---

[3] *See* U.S. Equal Emp. Opportunity Comm'n, EEOC Compliance Manual: Section 3 Employee Benefits (Oct. 3, 2000), https://www.eeoc.gov/laws/guidance/section-3-employee-benefits.

[4] Although this is a real case, the correct name is *Armstrong v. Turner Industries, Inc.* 141 F.3d 554.

6

> RA and the Americans with Disabilities Act. The court stated, 'The district court has broad discretion to fashion remedies once it has found a violation of law.'" (Pl. Reply [#43], ¶ 37.)

- o   This opinion, "United States v. City of Los Angeles, 595 F.3d 1006 (9th Cir. 2010)," **simply does not exist**. **No case exists with that reporter citation**. Nor does the quote come from any other federal case.

- "The Plaintiff has clearly articulated the specific actions required to remedy the discriminatory conduct, including targeted training, restorative assignment, and anti-retaliation measures. These requests are not vague but are specific actions that the Army can take to remedy the alleged discriminatory conduct. See, e.g., EEOC v. AutoZone, Inc., 707 F.3d 824, 840 (7th Cir. 2013) (upholding an injunction requiring specific anti-discrimination measures)." (Pl. Reply [#43], ¶ 40.)

    - o   Though this opinion does affirm in part a permanent injunction related to disability discrimination, the provided pincite does not include any holding by the court. Moreover, the injunctive relief pertained solely to accommodations for employees with disabilities—not to targeted training, restorative assignments, or anti-retaliation measures. *See id.* at 841–44.

- "Further, the relief sought by the Plaintiff is consistent with the law and jurisdiction of the Texas Western District. The Texas Western District has recognized that injunctive relief can include specific measures to remedy discriminatory conduct. See, e.g., EEOC v. Exxon Mobil Corp., No. SA-03-CA-159-FB, 2006 WL 2616827, at *1 (W.D. Tex. Sept. 11, 2006) (granting an injunction requiring specific anti-discrimination measures)." (Pl. Reply [#43], ¶ 43.)

    - o   **This opinion—which Plaintiff represents was written <u>*by this very District Court*</u>—does not exist.** Moreover, *no* case is assigned the Westlaw citation provided.

Beyond the extreme pattern of hallucinated legal citations summarized above, it appears that Plaintiff's counsel may have utilized GenAI to write some or all of his brief. For instance, Plaintiff's Reply uses the phrase "The Fifth Circuit, which includes the Western District of Texas, has recognized . . ." three separate times. (Pl. Reply [#43], ¶¶ 14, 20, 25.) The Court is well aware that it is within the Fifth Circuit. Such repetitive, redundant language makes the undersigned suspicious that Plaintiff used a genAI tool in an inappropriate manner. It strains credulity that an attorney would

7

feel the need to inform judges in the Western District of Texas of the Circuit in which they sit—let alone *three times*.

Under Federal Rule of Civil Procedure 11(b), by presenting this brief to the Court, Plaintiff's counsel has "certifie[d] to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the "legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b). Plaintiff has not lived up to this certification with this brief. The District Court should consider whether it is appropriate to sanction Plaintiff's counsel under Rule 11(c) based on his inappropriate use of GenAI. Appropriate sanctions may include a monetary penalty and/or a requirement to attend a continuing legal education course on the topic of generative AI. *See Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024) (requiring an attorney who cited quotes and cases that do not exist to pay a $2000 penalty to the Court, attend a generative AI continuing legal education course, and send a copy of the court's order to his client).

Plaintiff's conduct in this case may also violate the Texas Disciplinary Rules of Professional Conduct. The Professional Ethics Committee for the State Bar of Texas has provided the opinion that a "lawyer's failure to verify generative AI outputs can implicate a host of Rules, including Rule 1.01 (Competent and Diligent Representation), Rule 3.01 (Meritorious Claims and Contentions), Rule 3.03 (Candor Toward the Tribunal), and Rule 3.04 (Fairness in Adjudicatory Proceedings), among others." The Professional Ethics Committee for the State Bar of Texas, Opinion No. 705 (Feb. 2025), https://tcle-web.s3.amazonaws.com/public/documents/Opinion_705.pdf.

### IV. Analysis of the Pending Motion

The Secretary argued in his Motion for Judgment on the Pleadings [#31] that Plaintiff's sought-after remedies do not redress his injuries and that he therefore does not have standing. *See*

8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992) (explaining that a redressable injury is required for Article III standing, which is itself a requirement for a federal court to have jurisdiction); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (discussing that it is the plaintiff's burden to show that his injury would likely be redressed by judicial relief). Plaintiff's claims are brought under § 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794(a). As explained in the undersigned's previous Report and Recommendation [#39], § 504 does not "waive the Federal Government's sovereign immunity against monetary damages awards for Executive agencies' violations of § 504(a)." *Lane v. Pena*, 518 U.S. 187, 192–93 (1996). Plaintiff's claims for damages were therefore dismissed [#42].

There is still the possibility, however, that injunctive relief is available and would redress Plaintiff's injuries. Plaintiff's Injunctive Relief Statement [#40] and Reply in Support [#43] explain that he is seeking four types of injunctive relief: (1) "comprehensive and up-to-date training in the Defense Medical Logistics Standard Support (DMLSS) system and other relevant supply-related systems"; (2) a "restorative assignment," i.e., a promotion to a position comparable to the positions he had applied for but was denied; (3) "the appointment of a neutral third party, such as an Equal Employment Opportunity (EEO) officer or a Human Resources (HR) official" to ensure compliance with the Court's orders on injunctive relief; and (4) anti-retaliation protections, including mandatory training on preventing retaliation and discrimination, a monitoring system to track adverse employment actions taken against Plaintiff, a reporting mechanism for Plaintiff to report any incidents of retaliation or discrimination, and a prohibition on individuals who previously participated in discriminatory decisions against Plaintiff from participating in future employment decisions about Plaintiff. (Pl. More Definite Statement [#40], at 1–3; Pl. Reply [#43], at 4–8.)

A.     **Updated training would not redress Plaintiff's alleged injuries.**

As to Plaintiff's request for updated training, the undersigned agrees with the Secretary that such a remedy would not redress Plaintiff's injuries. He pleaded that the failure-to-promote incidents were caused solely by his disability and that he had been more qualified than the applicants selected over him. Under Plaintiff's theory of the case, additional training was unnecessary for a promotion.[5] Additional training would therefore not remedy Plaintiff's alleged injuries.

**B.      Plaintiff has not met his burden to explain how the Court may order the Secretary to promote him without violating federal statutes.**

Next, Plaintiff requests a "restorative assignment,"[6] which he describes as a "comparable position" to the positions for which he had applied and was denied, allegedly due to discrimination or retaliation.[7] The Secretary represented in his Reply in Support of his original Motion for Judgment on the Pleadings that the positions Plaintiff applied for are "competitive service" positions. (Secretary Reply [#35], at 4.) Federal regulations mandate that vacancies in such positions must be filled "by any method authorized in this chapter, including competitive appointment from a list of eligibles, noncompetitive appointment under special authority, reinstatement, transfer, reassignment, change to lower grade, or promotion." *See* 5 C.F.R. § 330.102. Moreover, the Office of Personnel Management ensures that federal agencies comply with "open competition principles," as mandated by federal regulations. *See* 5 C.F.R. § 330.503. The undersigned therefore ordered that Plaintiff's

---

[5] To the extent Plaintiff pleaded that he was denied training as part of a hostile-work-environment claim, his hostile-work-environment claim was dismissed by the District Court as recommended by the undersigned [#30].

[6] The Secretary takes issue with the term "restorative," as Plaintiff has maintained his job with the Army; he has not been demoted or discharged. (Secretary Reply [#44], at 4.)

[7] Plaintiff's Injunctive Relief Statement [#40] asked for the "identification and availability of a comparable position within the pharmacy supply sector, with salary and responsibilities similar to those previously denied." His Reply in Support [#43] clarifies that he is intending to ask for placement in such a position.

10

More Definite Statement on what injunctive relief he is seeking explain how his sought-after relief would not violate federal statutes or regulations. (Report and Recommendation [#39], at 5.)

Plaintiff's Injunctive Relief Statement [#40] does not even *attempt* to explain how promoting him would not violate these regulations. Nor does Plaintiff provide legal authority for his contention that this is an appropriate injunctive remedy under the Rehabilitation Act. In fact, the *only* legal precedent he cites in his Reply in Support [#43] to support his argument for this injunctive remedy is a made-up quotation, as discussed in Section III, *supra*. Beyond the "hallucinated" legal contention, Plaintiff does not cite to any other case law supporting that the Court may order the Army to promote him without violating federal regulations, nor has the undersigned found case law from any jurisdiction in support of such a remedy.

**C.     Plaintiff's request for "clear safeguards" is moot or otherwise impermissible**.

As to Plaintiff's request for "clear safeguards against any adverse actions influenced by individuals involved in prior discriminatory or retaliatory conduct," these requested remedies are moot or otherwise impermissible. Plaintiff's request that the Army require its employees to participate in mandatory training on preventing retaliation and discrimination is moot, as the Army already provides such training. *See* Army Regulation 690–12, Civilian Personnel Equal Employment Opportunity Programs (Feb. 6, 2025), located at https://api.army.mil/e2/c/downloads/2025/02/21/551aeef9/ar-690-12-civilian-personnel-equal-employment-opportunity-programs.pdf.[8] Chapter 7 of this regulation requires that EEO training be provided to all civilian employees and that this training must include "the provisions of the Federal Employee Antidiscrimination and Retaliation (No FEAR) Act." *Id.* at 7-2. Moreover, the Army is already required to have an affirmative action program plan in place for individuals with disabilities

---

[8] The undersigned may take judicial notice of matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

11

and already may not retaliate against those who make complaints related to disability discrimination. *See* 29 U.S.C. § 791 (requiring federal agencies to have an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities); 29 C.F.R. § 1614.102 (same); 29 U.S.C. § 794(d) (explicitly incorporating the Americans with Disabilities Act's anti-retaliation provisions into the Rehabilitation Act). The affirmative action program must include reviewing managerial and supervisory performance to ensure "vigorous enforcement of the policy of equal opportunity." 29 C.F.R. § 1614.102(a)(5).

Plaintiff fails to explain how the above regulations regarding training on anti-discrimination and anti-retaliation principles are not sufficient. As pointed out by the Secretary, he does not make any allegations regarding these policies, i.e., that the training is insufficient or was not followed with respect to his applications. Moreover, this Court may not grant an injunction "simply telling a party to 'obey the law,'" and Plaintiff does not provide the Court with any specific proposed relief that would go beyond the Army's already-existing regulatory obligations. *See Carter v. Loc. 556, Transport Workers Union of Am.*, 138 F.4th 164, 204 (5th Cir. 2025) (citing *Payne v. Travenol Lab'ys, Inc.*, 565 F.2d 895, 897–98 (5th Cir. 1978) (". . . [O]ur court has long held that injunctions simply telling a party to 'obey the law' are improper."). Plaintiff himself represents that he "is not asking the Court to dictate policy but rather to enforce existing federal law, specifically the [Rehabilitation Act]." (Pl. Reply [#43], ¶ 36.)

As to Plaintiff's proposed injunctive relief of ordering the Army to create a reporting mechanism for him "to report any incidents of retaliation or discrimination" and a "monitoring system to track adverse employment actions" against him, these suggestions also appear to be impermissible under federal regulations. 29 C.F.R. § 1614.103 requires Rehabilitation Act claims to "be processed in accordance with this part." Plaintiff **does not attempt to explain** how his having a

reporting mechanism specifically designed for his personal use would be permissible under this regulation. Similarly, 29 C.F.R. § 1614.102(a) requires federal agencies to "[a]ppraise its personnel operations at regular intervals to assure their conformity with its" affirmative action program, "[t]ake appropriate disciplinary action against employees who engage in discriminatory practices," and "[r]eview, evaluate and control managerial and supervisory performance in such a manner as to insure a continuing affirmative application and vigorous enforcement of the policy of equal opportunity." Again, Plaintiff does not state why a personalized monitoring system is permissible or necessary based on the already-existing requirements.

Plaintiff is also requesting that Army employees who he contends discriminated against him be prohibited from participating in decisions related to his employment. Again, Plaintiff has cited no authority for his contention that this is an injunctive remedy that this Court is empowered to order under the Rehabilitation Act, even assuming that Plaintiff could prevail on his Rehabilitation Act claim. And, of course, any Army employees who engage in illegal discrimination are already subject to "appropriate disciplinary action." *See* 29 C.F.R. § 1614.102(a)(6). The Army must comply with the applicable regulations on employee discipline in such circumstances.

**D.      Plaintiff's request for appointment of a neutral third party is moot.**

The final equitable remedy requested by Plaintiff—the appointment of a neutral third party to ensure compliance with the other injunctive relief granted by the Court—is moot, as none of the other types of proposed injunctive relief are permissible.

**E.      Plaintiff's overall argument as to why federal regulations do not restrain this Court is inapposite.**

Finally, Plaintiff asserts in his Reply in Support [#43] of his Injunctive Relief Statement that the Secretary cannot rely on regulatory mandates to argue that the Court has no authority to order certain remedies. He cites as support *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 56 (1974), and

13

*Armstrong v. Turner Indus., Inc.*, 141 F.3d 554 (5th Cir. 1998). But as noted in Section III, *supra*, the quotes Plaintiff attributes to those two cases are made-up quotes not found in those cases or any other case. He then cites to the Rehabilitation Act itself and its remedies provision. This provision (29 U.S.C. § 794a(a)(2)) points to the remedies provision in Title VI (42 U.S.C. § 2000d). Plaintiff does not provide any (real) case law supporting that promotion is a permissible remedy under either statute, either for private employers or the federal government.

Plaintiff also references *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984). As stated previously in Section III, *supra*, this case has been overturned. *Loper Bright Enter.*, 603 U.S. at 412. Yet, even if *Chevron* were still good law, Plaintiff's argument is inapposite; *Chevron* is about interpretation of regulations. What is at issue here is *compliance* with regulations—and Plaintiff provides no support on this topic.

Plaintiff subsequently attempts to distinguish *Scott v. Schedler*, 826 F.3d 207, 213 (5th Cir. 2016), which the Secretary cites as support for his argument that the Court cannot rewrite federal regulations and "act as an executive or legislative agent of the state." Plaintiff responds that his case is different because he is "not asking the Court to dictate policy but rather to enforce existing federal law, specifically the [Rehabilitation Act]." (Pl. Reply [#43], ¶ 36.) What Plaintiff fails to understand, however, is that the primary concern at issue here is not whether the Court can generally order the Executive Branch to act—rather, the primary concern is whether the Court can *order the Executive Branch to take actions that are inconsistent with statutory and regulatory requirements that apply to the Executive Branch*. Plaintiff has not provided the Court with any precedent showing it may do so.

Thus, Plaintiff has failed to request any injunctive relief that would be permissible and would redress his injuries. He therefore lacks standing, and the Court should grant the Secretary's Renewed Motion for Judgment on the Pleadings [#41].

## V.     Conclusion and Recommendation

Plaintiff has failed to demonstrate that there are any permissible remedies that would redress his injuries. He therefore lacks standing to bring this action. The Court should grant the Secretary's Renewed Motion for Judgment on the Pleadings [#41] and dismiss this case.

Having considered the Secretary's motion, the response and reply thereto, the pleadings, and the governing law, the undersigned **RECOMMENDS** that the Secretary's Motion for Judgment on the Pleadings [#41] be **GRANTED**. The undersigned further **RECOMMENDS** that the District Court consider imposing sanctions under Fed. R. Civ. P. 11(c) after Plaintiff has had the opportunity to respond and object to this Report and Recommendation.

## VI.     Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed

findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 28th day of August, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE